## No. C-632

**In re Petition of T.C.H. v. J.M.S.: James M. Seger v. Terry C. Huff, for the Adoption of a Child, D.L.S.**

(545 P.2d 1357)

Decided February 9, 1976.                    Rehearing denied March 8, 1976.

Richard A. Anderson, for petitioner.

Mellman, Mellman & Thorn, P.C., Gerald N. Mellman, for respondent.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

We granted certiorari to review *Petition of T.C.H. v. J.M.S.*, 35 Colo. App. 40, 531 P.2d 404 (1974), in which the court of appeals in a two-to-one decision affirmed an order of the district court granting a stepparent adoption without consent of the natural father. We reverse.

The sole issue in this appeal is whether the father (petitioner herein) has failed "without cause" to support his son, D.L.S., for one year or more, whereby the juvenile court could order the child to be available for adoption without petitioner's consent. 1969 Perm. Supp., C.R.S. 1963, 22-4-7(1)(f)(i).[1] That section permits adoption upon:

"Written and verified consent of the parent in a stepparent adoption where the other parent is deceased or his rights have been terminated under paragraphs (b) or (c) of this subsection, or where the other parent has abandoned the child for a period of one year or more or *where he has failed without cause to provide reasonable support for such child for a period of one year or more*:" (Emphasis added.)

The facts were that the natural parents of D.L.S., the child subject to these proceedings, were divorced in Iowa in 1968. Pursuant to the divorce decree, the father was awarded custody of seven of the eight children of the marriage. Custody of the infant D.L.S. was awarded to the mother. She later in 1971 married the respondent, who sought the adoption decree. In the matter of custody and the obligations for child support, the Iowa decree contained the following provision:

". . . no amount of child support to be paid by either party is fixed at this time based upon the lack of any present income by either the plaintiff or defendant at the time of trial."

The decree further provided that each party should have reasonable rights of visitation with the children or child in the custody of the other party.

In 1972 respondent filed a petition to adopt D.L.S. pursuant to the above-cited section of the Colorado Children's Code. Respondent alleged that petitioner had failed to provide any child support for D.L.S. and contended that, as the stepfather, he could adopt the child without petitioner's consent.

The record reflects that D.L.S.'s mother (respondent's wife and petitioner's former wife) never sought modification of the Iowa decree. She had not requested a court order for child support or sought any support money from petitioner subsequent to the divorce. There is no dispute that D.L.S. has been adequately provided for since that time. The stepfather testified that he did not wish petitioner to pay child support.

---

[1] Now section 19-4-107 (1)(e)(II), C.R.S. 1973.

The record further reflects that petitioner last visited with his son in 1970 but that he has since regularly sent remembrance cards and small gifts on his birthday and on holidays. Petitioner testified that his attempts to visit with his son have been thwarted both by his former wife and by the stepfather. He stated that he has offered to support the child but that the mother repeatedly rejected any offer of assistance. Petitioner has also expressed a willingness to support the child at present.

The mother, on the other hand, testified that petitioner offered to lend financial assistance on only one occasion, at which time he said that he would give her a sum of five thousand dollars on the condition that she would allow him to take the child home with him.

■ In our view the evidence in this case does not justify the determination reached either by the trial court or by the court of appeals. In this record petitioner cannot be found to have failed to support his son "without cause." In the face of the valid Iowa court decree petitioner was specifically relieved of the obligation to support the child. The court recognized his responsibility — which from all indications he has assumed ever since — to support the seven children in his custody. In effect, petitioner had an express judicial release of a parental obligation, which has never been subsequently modified; and he had cause to rely thereon.

The cases cited in the majority opinion of the court of appeals are all distinguishable in this regard. In *Moreau v. Buchholz*, 124 Colo. 302, 236 P.2d 540 (1951), the natural father was held to have abandoned[2] his daughter when he failed to comply with a court order requiring him to pay a fixed amount of child support. In *Fulton v. Martensen*, 129 Colo. 125, 267 P.2d 658 (1954), the divorce decree was silent on the question of child support. *Fulton* is further distinguishable from this case in that the father never tried to contact the child, never sent cards or presents, nor did he ever offer any financial support. *Desch v. Desch*, 55 Colo. 79, 132 P. 60 (1913), is inapposite; it deals with the right of a divorced custodial parent to recover reasonable expenses for child support from the noncustodial parent. *Stjernholm v. Mazaheri*, 180 Colo. 352, 506 P.2d 155 (1973), is distinguishable on grounds similar to *Moreau, supra*.

■ Because of the harshness of permanently terminating parental rights (and in this case also severing the relationship between D.L.S. and his seven siblings who reside with petitioner), we require strict compliance with the statute. This view has been adopted in other jurisdictions. See *In re Adoption of Biery*, 164 Mont. 353, 522 P.2d 1377 (1974); *Nevelos v. Railston*, 65 N.M. 250, 335 P.2d 573 (1959); *Marston v. Marston*, Okla., 389 P.2d 510 (1964); *In re Adoption of McCoy*, 31 Ohio Misc.

---

[2] In this case the trial court concluded that "there is insufficient evidence of abandonment by the father . . . ."

195, 287 N.E.2d 833 (1972); and *In re Adoption of Smith*, 229 Ore. 277, 366 P.2d 875 (1961), in which the court noted:

"The best-interests-of-the-child standard has no similar relation to the issues presented in a proceeding to dispense with consent for an adoption. In an adoption, a court is asked to terminate every right and interest of the natural parent. Adoption goes far beyond the child-centered question of custody during minority. Indeed, the denial of an adoption petition has no necessary bearing on the physical custody of the child. The child's environment can be protected in a number of ways, under the divorce laws and the juvenile code. The petition to adopt concerns a different kind of right, the subjective tie between a parent and child, the right of a parent to be identified with his child for emotional, religious or other reasons. A father may hope his son will bear his name; a mother may anticipate that her daughter will inherit her property. On the other hand, there is ordinarily no vital interest of the child which requires the termination of his parents' rights. The use of a convenient name, for example, need not require the formality of adoption. Where there is an exceptional case which does require the liquidation of parental rights, the statutes . . . cover the situation."

The trial court's ruling — affirmed by the court of appeals — that there was compliance with the statute in this case was erroneous. We agree with the dissenting judge that allowing an adoption to proceed under these circumstances would have an unnecessarily disquieting impact on the rights of non-custodial parents. As stated in the dissent:

"Under the precedent set by this case a custodial parent could too easily entrap an unsuspecting non-custodial parent, in spite of a court order to the contrary, into a situation resulting in not only the termination of the parental rights of the father, but deprivation of the child's rights respecting his or her natural parent. . . ."

In conclusion, we hold that D.L.S. was not available for adoption under section 22-4-7(1)(f)(i) in the absence of petitioner's consent. In this case, consideration of the best interests of the child[3] is not a determination which is reached.

Accordingly, the judgment of the court of appeals is reversed with directions to remand to the trial court for entry of an order denying the petition.

MR. CHIEF JUSTICE PRINGLE does not participate.

---

[3] See 1971 Perm. Supp., C.R.S. 1963, 22-4-12(2); now section 19-4-112(2), C.R.S. 1973.