In the Matter of the Petition of R.H.N.,

And Concerning D.A.K., Appellant,

for the Adoption of D.D.K., A.C.K., S.E.K., Children,

R.H.N., Appellee.

No. 82CA0968.

Colorado Court of Appeals, Div. I.

Jan. 5, 1984.

Nicholas J. Bourg, Colorado Springs, for appellant.

Mary Jane Looney, Colorado Springs, for appellee.

METZGER, Judge.

In our previous consideration of this matter, *In re Petition of R.H.N.*, 673 P.2d 805 (Colo.App.1983), we remanded to the trial court for additional findings. Pursuant to that remand, the trial court has certified to this court its order containing additional findings of fact and conclusions of law.

Since the order of remand sets out the facts we will not restate them here, except to note that this case involves an incarcerated natural father's appeal of the trial court's issuance of a decree of adoption to the children's stepfather, based on the natural father's failure to provide reasonable support without cause for a period of one year or more. We remanded this matter to the trial court for a determination of two issues:

"(1) whether the father failed, during the 12-month period immediately preceding the filing of the stepfather's petition for adoption, to provide child support that was reasonable under the circumstances and, if so (2) whether that failure was without cause, pursuant to § 19–4–107(1)(e)(II) C.R.S.1973 (1978 Repl.Vol. 8)."

The trial court answered both questions in the affirmative after making extensive findings of fact and conclusions of law, and we affirm its determinations.

As to the first question, the trial court found that during the 12-month period im-

mediately preceding the petition for adoption, father was serving a sentence for aggravated robbery at the Colorado Department of Corrections. During this time, he was paid $1.50 per day, for a yearly total of $547. Father had paid no support at all for his three children, and used his money for cigarettes and soap.

The trial court concluded that:

"[A] caring father ... would have provided some amount for the benefit of his children.... His necessities were being provided for at no expense to himself. Providing no support was unreasonable even under these dire circumstances."

We are bound by the trial court's factual determinations which are supported by the evidence. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979). The trial court, in its order, acknowledged that father was unable to provide the $150 per month ordered as child support in the decree dissolving father's marriage to the children's mother. However, the test set out in § 19–4–107(1)(e)(II), C.R.S.1973 (1978 Repl. Vol. 8) is whether reasonable support was paid. That determination must necessarily be predicated on a party's financial circumstances rather than on a rigid interpretation of a support order entered at a prior time. *In re Petition of F.J.H.,* 628 P.2d 159 (Colo.App.1981).

As to the second question, the trial court found that, since father could have paid some amount for the benefit of his children, his failure to provide any support was without cause.

The trial court's orders, read together, indicate that R.H.N. sustained his burden of proving father's failure without cause to provide reasonable support for a one-year period by clear and convincing evidence. The trial court's determination of the law was correct. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

Accordingly, the judgment is affirmed.

PIERCE, J., concurs.

BERMAN, J., dissents.

BERMAN, Judge, dissenting.

I respectfully dissent.

John Updike once wrote:

"The founding fathers in their wisdom decided that children were an unnatural strain on parents. So they provided jails called schools, equipped with tortures called education." *The Centaur,* ch. 4.

It seems to me that my colleagues, in their wisdom, have decided that the converse of Updike's statement is also true: that felonious fathers are an "unnatural strain" on their children. And so the majority has provided jails equipped with the "torture" called termination of parental rights.

The termination of a parent's rights in his natural children is a harsh measure which requires strict compliance with the terms of § 19–4–107, C.R.S. 1973 (1978 Repl.Vol. 8). *In re Petition of T.C.H. v. J.M.S.,* 190 Colo. 246, 545 P.2d 1357 (1976). Where, as here, there is no consent or abandonment by the parent, that statute requires that there must be "clear and convincing evidence," *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), that the father "failed, *without cause,* to provide reasonable support for [his] child for a period of one year or more." Section 19–4–107(1)(e)(II), C.R.S. 1973 (1978 Repl.Vol. 8) (emphasis added).

Here, the trial court, upon remand, stated in its "conclusions of law," that the father's failure to provide reasonable financial support was "without cause." However, such a conclusion is unsupported by "clear and convincing evidence" and, thus, constitutes reversible error. Given the non-binding nature of the trial court's findings and conclusions herein at issue, *see Maltby v. J.F. Images, Inc.,* 632 P.2d 646 (Colo.App.1981), I would, thus, reverse its decision to cut off the natural father's parental rights.

The cold, hard realities here are that the father's income was limited to $1.50 per day and that the father had no independent source of wealth. Contrary to the trial court's conclusion, the father's necessities

were not "being provided at no expense to himself." For example, if the father felt the need, as most of us do, to wash his hair or brush his teeth, the correctional facility would provide no shampoo or toothpaste free of charge. Rather, the father would have to purchase such items out of his $1.50 per day allotment.

On remand, the trial court did concede that the father's income was "paltry" and that the father was living under "dire circumstances." Nevertheless, and despite the fact that the father, once incarcerated, no longer had control over his poverty, the trial court found that the father's failure to provide reasonable support was "without cause."

A careful examination of the trial court's conclusions of law on remand reveals that the rational underpinnings of its determination that the father's impoverishment does not amount to "cause" are grounded in the trial court's feeling that, although impoverishment was a necessary function of the father's imprisonment, the father's imprisonment was, after all, directly attributable to the father's "own voluntary criminal acts." In short, a glance at the trial court's second conclusion of law on remand lays bare the fact that the court weighed the following factors against the father in determining whether failure to provide reasonable support was "without cause," so as to justify termination of the father's parental rights: (1) the mere fact of the father's present incarceration, and (2) the father's previous incarceration for aggravated robbery.

I vigorously oppose the consideration of such factors for two reasons. First, it violates the long-standing principle articulated by our Supreme Court in *Ziemer v. Wheeler*, 89 Colo. 242, 1 P.2d 579 (1931) that a convicted felon by that fact alone is not to be deprived of his parental rights. And second, by this opinion, the majority pronounces a new categorical rule that, whenever the factors of imprisonment and poverty coincide with respect to a parent, the state may, without further questions,

1. *The Sense of Injustice,* Edmond Cahn, 1949.

wrench that parent from his child and terminate all rights that the impoverished inmate has to his children. It is indeed a sad day for a parent and his or her natural children when the government is permitted to tear father and son or mother and daughter apart based upon a crystal-ball projection of the most financially "enriching" setting for a child and upon a mere desire to compound the sentence for a parent's past crimes.

The result in this case evokes a "sense of injustice,"[1] which no amount of seemingly logical responses in the form of concepts or abstractions can overcome. I would, therefore, reverse and remand with directions to dismiss the petition for adoption.

