710 P.2d 482 (1985)
In the Matter of the Petition of R.H.N.
And Concerning D.A.K., Appellant, for the Adoption of D.D.K., A.C.K., S.E.K., Children,
R.H.N., Appellee.
No. 84SC93
Supreme Court of Colorado, En Banc.
December 16, 1985.
*483 Nicholas J. Bourg, Colorado Springs, for appellant.
Jane Looney, Colorado Springs, for appellee.
DUBOFSKY, Justice.
We granted certiorari in In re R.H.N., 678 P.2d 1070 (Colo.App.1984), to consider whether the court of appeals erred in affirming the district court's order terminating parental rights of the natural father and granting a stepparent adoption. The court of appeals agreed with the district court's ruling that the father's failure to pay child support from prison earnings of $1.50 per day for twelve consecutive months constituted a failure to pay reasonable support as required by section 19-4-107(1)(e)(II), 8 C.R.S. (1978).[1] We affirm.
On October 29, 1981, R.H.N., the stepfather, filed a petition to adopt his wife's three children by a former marriage, alleging that the children's natural father, D.A.K., had failed to support the children. *484 At the time the petition was filed, the children were eight, seven, and five years old. Although the children's mother consented to the adoption, D.A.K., who was at that time incarcerated in the state penitentiary, denied that he had failed to provide reasonable child support without cause and refused to consent to the adoption.
The district court appointed an attorney for D.A.K. and set the matter for hearing on April 20, 1982. At the hearing, the mother testified that the May 25, 1977, dissolution of marriage decree directed D.A.K. to pay $150 a month to the Department of Social Services for child support but that D.A.K. failed to pay either the Department of Social Services or her, although D.A.K. did send his children Christmas presents in either 1977 or 1978. According to the mother, D.A.K. attempted to see the children one time in church in either 1977 or 1978, once at two o'clock in the morning in August 1978, while D.A.K. was intoxicated, and once in June 1979 after he had been drinking. During the last attempted visit in 1979, D.A.K. scuffled with the stepfather. The stepfather's testimony supported the mother's description of D.A. K.'s attempt to visit the children in the church, his visit at two o'clock in the morning in 1978, and his attempted visit during the summer of 1979. The stepfather stated that he had been providing for the children without any assistance from D.A.K. since the stepfather's marriage to the mother in November 1980.
The district court determined that D.A.K. was incarcerated from October 1977 until January 1978, from February 1978 to April 1979, and from April 1980 through the time of the termination hearing. D.A.K. earned approximately $150 per week from May 1977 until October 1977, $320 per week from May 1979 until September 1979, and $1.50 per day while incarcerated. D.A.K. testified that he gave the mother $20 or $30 when he saw the children during the summer of 1977 but that he did not pay child support when he worked during 1979 because the mother did not allow him to see his children. He claimed that he did not have the ability to provide child support while incarcerated because the $1.50 per day that he earned was put into an account that he spent on cigarettes and sundries. The district court found that the adoption was in the best interests of the children and that D.A.K. had provided no support for his children since May 25, 1977.
On appeal D.A.K. argued that the district court incorrectly totaled the nonconsecutive periods amounting to 513 days during which he was not incarcerated in finding that he had not provided support for "one year or more" under section 19-4-107(1)(e)(II), that the statute required a consecutive twelve-month period, and that the adoption petition should not have been granted because he was incarcerated for the twelve-month period immediately preceding the filing of the petition. In In re R.H.N., 673 P.2d 805 (Colo.App.1983), the court of appeals held that the "period of one year" in section 19-4-107(1)(e)(II) means a consecutive twelve-month period and that incarceration is not a per se justification for failure to pay child support. The court of appeals remanded the case to the district court to allow it to make findings regarding whether D.A.K. failed without cause to provide reasonable child support during the consecutive twelve-month period immediately preceding the stepfather's filing of the adoption petition.
On remand the district court found that D.A.K. earned $547.50 during the twelve months immediately preceding the filing of the adoption petition, that his failure to provide some portion of this amount as child support was unreasonable even during incarceration, and that this failure was without cause.[2] The court of appeals affirmed *485 the district court's order, ruling "that R.H.N., sustained his burden of proving father's failure without cause to provide reasonable support for a one-year period by clear and convincing evidence." R.H.N., 678 P.2d at 1071.
Termination of parental rights in stepparent adoption proceedings needs to be addressed in a broader context than the single provision of the statute addressed by the court of appeals, failure to pay child support without cause for one year. In contrast to termination of parental rights under section 19-4-101, 8 C.R.S. (1985 Supp.), and adoption under section 19-4-110, 8 C.R.S. (1978), which are separate proceedings, a termination/stepparent adoption is a single proceeding, commenced when a stepparent files a petition to adopt. § 19-4-107(1)(e)(II). The consequence is that the trial court must address at the same time a number of factors: (1) whether the best interests of the child are served by the termination of the natural parent's rights and by the adoption; (2) whether the natural parent failed without cause to pay reasonable child support for one year or more; and (3) whether there is any likelihood that the natural parent will provide child support.
Courts typically terminate parental rights under a "parental fault" standard, in which the court focuses on the behavior of the parent or parents, a "best interests of the child" standard, in which the court focuses on the effect of termination of parental rights on the child, or a combination of both. The issue in this case, whether an incarcerated father's failure to pay child support may serve as a basis to terminate his parental rights, has been presented focusing on parental fault. However, Colorado courts have considered stepparent petitions for adoption in the broader context of the best interests of the child. See Stjernholm v. Mazaheri, 180 Colo. 352, 356, 506 P.2d 155, 157 (1973); J.A.A. v. C.R., 618 P.2d 742 (Colo.App.1980).
One of the problems of focusing solely on parental fault is that parental rights may be terminated because a parent fails to pay child support when that parent may have a close relationship with the child and termination may be detrimental to the child. The parental fault standard ignores the child's interest in parental ties. The modern trend is to consider termination of parental rights in the context of the best interests of the child standard. Coleman, Standards for Termination of Parental Rights, 26 Wayne L.Rev. 315 (1980); Wald, State Intervention on Behalf of "Neglected" Children: Standards for Removal of Children from Their Homes, Monitoring the Status of Children in Foster Care, and Termination of Parental Rights, 28 Stan.L.Rev. 623 (1976); Comment, A Survey of State Law Authorizing Stepparent Adoptions without the Noncustodial Parent's Consent, 15 Akron L.Rev. 567 (1982); Note, Adoption: Adoptions Absent Parental Consent: Cases Call for Statutory Revision, 37 Okla.L.Rev. 767 (1984); Case Comment, Family LawMassachusetts Rejects Clear and Convincing Evidence Standard in Favor of "Persuasive" Evidence in Proceedings to Terminate Parental Rights, 15 Suffolk U.L.Rev. 1337 *486 (1981); see Note, Making Parents Behave: The Conditioning of Child Support and Visitation Rights, 84 Colum.L.Rev. 1059 (1984).
Section 19-4-112(2)(d), 8 C.R.S. (1978), provides that a court may not enter a final decree of adoption unless the adoption is in "the best interests of the child." Since section 19-4-112(2)(d) and section 19-4-107(1)(e)(II) both govern adoption, they must be construed together. People v. Hamilton, 666 P.2d 152 (Colo.1983). Because of the child's and the parent's interests in parental ties, because section 19-4-112(2)(d) requires that the court find that the adoption is in the best interest of the child in all final adoption decrees, and because focusing on parental fault ignores the fact that termination of parental rights as part of a stepparent adoption proceeding may be detrimental to the child, the best interests of the child should be considered both with respect to termination of the natural parent's rights and with respect to the adoption in a stepparent adoption proceeding.[3]
In determining the best interests of the child, the court may consider, among other factors, family stability, the present and future effects of adoption, including the detrimental effects of termination of parental rights, the child's emotional ties to and interaction with the contestants, the adjustment of the child to the living situation, the child's age, and the mental and physical health of the parties. See Coleman, supra, at 336-40; Comment, Survey of State Law, supra, at 570. In this case the record supports a finding that the termination and adoption were in the best interests of the children. The district court found that the stepfather had formed a loving relationship with the children, that the stepfather had supported the children since his marriage to their mother, that the children desired the adoption, that the stepfather would provide a suitable home for the children, that the natural father previously had made only sporadic attempts to visit the children, and that the natural father had not seen the children or contacted them by mail or telephone since 1980.
Once a court has determined in the context of a stepparent adoption proceeding that termination and adoption would be in the best interests of the child, the court must then consider whether, as provided by section 19-4-107(1)(e)(II), the child is "available for adoption" because the natural parent failed to provide reasonable support without cause. See §§ 19-4-107(1), 8 C.R.S. (1978 & 1985 Supp.), 19-4-112(2)(a), 8 C.R.S. (1978). D.A.K. asserts that he was justified in not contributing to his children's support because any contribution he might have made would not have been reasonable in terms of the actual needs of the children. However, Colorado case law during the twelve-month period before the petition for adoption was filed indicated that D.A.K. might have been excused from providing the full $150 per month as long as he provided reasonable support. In In re T.C.H., 35 Colo.App. 40, 44, 531 P.2d 404, 406 (1974) (quoting Johnson v. Johnson, 215 Mass. 276, 102 N.E. 465 (1913)), rev'd on other grounds, 190 Colo. 246, 545 P.2d *487 1357 (1976), the court held that reasonable support varies from case to case, depending on "the actual physical needs of the beneficiary, his station in life, social and otherwise, the demands to be met and the amount of the income." See also In re F.J.H., 628 P.2d 159 (Colo.App. 1981) (parent need not provide amount of support specified under decree for period of one year in order to provide "reasonable support" under section 19-4-107(1)(e)(II)).
The district court's finding that D.A.K. failed to support his children without cause is based not on the fact that he failed to provide $150 per month or his total income of approximately $45 per month, but rather on the fact that D.A.K. failed to provide any child support. See In re Adoption of Michelle N., 577 P.2d 68 (Okla.1978) (failure to pay child support found willful where, out of $308 per month from salary in work release program, $100 per month was sent to current wife, $118 per month was paid for room and board, $50 went into institutional savings program, and $40, none of which was contributed for child support, was retained for spending money); see also Karkanen v. Valdesuso, 33 Colo.App. 47, 50, 515 P.2d 128, 130 (1973) (consent for adoption not necessary when parent could have provided some child support by working as a physical therapist while in medical school). Parents are not excused from their obligation to support their children merely because their incomes are small. Although incarceration is a factual circumstance that the court may consider in deciding what level of support is reasonable, see F.J.H., 628 P.2d at 160; T.C.H., 35 Colo.App. at 44, 531 P.2d at 406, incarceration does not totally excuse a parent's obligation to provide some child support.[4]
We agree with the court of appeals that the phrase "period of one year" in section 19-4-107(1)(e)(II) "means the consecutive twelve-month period immediately preceding" the stepparent adoption petition because that is the statute's "plain ordinary meaning." In re R.H.N., 673 P.2d at 806. However, because natural parents have a fundamental liberty interest in the companionship, care, custody, and management of their children, a court must provide parents with fundamentally fair procedures if termination of parental rights is sought. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); People ex rel. A.M.D., 648 P.2d 625 (Colo.1982). In order to provide a procedure that is fundamentally fair, once a court has determined that a natural parent has failed to provide child support during the twelve-month period immediately preceding the filing of the petition under section 19-4-107(1)(e)(II), the court must look beyond the twelve-month period to determine whether there is any likelihood that the natural parent will provide child support.
Consideration of previous periods of nonpayment does not change the result in this case. The district court found that D.A.K., by his own admission, had the ability to provide child support during the 513 days when he was not incarcerated. The district court in this case stated that it could not "ignore the fact that [D.A.K.] has failed to provide any support for these children for a period of nearly five years." Moreover, D.A.K. did not indicate at the hearing that he had any intention of providing child support. Cf. F.J.H., 628 P.2d at 161 (petition for adoption denied where parent paid some child support in past, resumed child support payments on regular basis, and "indicate[d] his willingness to honor his parental obligations").
D.A.K. testified that he refused to provide child support during the period in 1979 in which he was not incarcerated because he was not allowed to see his children. *488 Although a trial court has the discretion to consider a parent's mistaken belief that child support is conditioned on visitation rights as a factual circumstance in deciding whether a parent has failed without cause to provide reasonable support, F.J.H., 628 P.2d at 160, a violation of visitation rights does not legally suspend the obligation to support one's children. County of Clearwater, Minnesota v. Petrash, 198 Colo. 231, 598 P.2d 138 (1979); Gruber v. Wallner, 198 Colo. 235, 598 P.2d 135 (1979).
The district court terminated D.A. K.'s parental rights not because he was incarcerated, but because termination and adoption were in the best interests of the children and because D.A.K. refused to provide his children with a reasonable proportion of his income of $1.50 per day. Whether a parent has failed to provide reasonable support is a question of fact to be determined by the trial court on a case-by-case basis. F.J.H., 628 P.2d at 160. We agree with the court of appeals that "[t]he trial court's orders, read together, indicate that R.H.N. sustained his burden of proving [D.A.K.'s] failure without cause to provide reasonable support for a one-year period by clear and convincing evidence."[5] The record supports the district court's findings.
Judgment affirmed.
NOTES
[1] Section 19-4-107 provides in part:

(1) A child may be available for adoption only upon:
. . . . .
(e)(II) Written and verified consent of the parent in a stepparent adoption where the other parent has abandoned the child for a period of one year or more or where he has failed without cause to provide reasonable support for such child for a period of one year or more.
[2] The district court's conclusions of law state:

As has been indicated above he had available during the year some $547.50 and provided none of that amount to his children. Certainly, given the circumstances, he could not have paid the $150 per month ordered in the dissolution. A caring father, however, would have provided some amount for the benefit of his children even from a paltry income of $1.50 per day. His necessities were being provided for at no expense to himself. Providing no support was unreasonable even under these dire circumstances.
.... The fact that a parent has been incarcerated for the 12-month period immediately preceding the filing of a petition is one factor to be considered by the Court in making its determination. As the Court has indicated, this father could have paid some amount for the benefit of his children and, furthermore, the cause of his being incarcerated was none other than his own criminal activity. This Court cannot ignore the fact that the father had previously been convicted of conspiracy to commit aggravated robbery and required to serve a sentence for that crime. By definition aggravated robbery is at least a voluntary act. Perhaps the first time resulting in incarceration was excusable and the failure to support at that time was with cause. At some point, however, the law surely must say that these children should not be deprived because of the voluntary criminal acts of their father. Even if this Court is incorrect as to the law on the aforementioned point, the father has presented no evidence showing why he could not have sent some of his meager income to his children as child support. His failure was, therefore, without cause.
[3] We note that the court of appeals in People ex rel. S.S.T., 38 Colo.App. 110, 115, 553 P.2d 82, 88 (1976) observed:

In providing for a child found to be dependent or neglected, the focus is the best interests of that child. Johnson v. People, 170 Colo. 137, 459 P.2d 579; People In re Interest of A.R.S., 31 Colo.App. 268, 502 P.2d 92. In contrast, a stepparent adoption proceeding is not based on a societal responsibility to improve a child's situation. The best interests of the child are only one of the factors to be considered in evaluating a petition in such a proceeding. See Petition of T.C.H., [190] Colo. [246], 545 P.2d 1357.
Although this court in T.C.H. v. J.M.S., 190 Colo. 246, 249, 545 P.2d 1357, 1360 (1976), said it was not reaching the issue of best interests of the child, it quoted at length from In re Adoption of Smith, 229 Or. 277, 366 P.2d 875 (1961), to the effect that the best interests of the child standard is not relevant in a proceeding to dispense with consent for an adoption. To the extent that this court's decision in T.C.H. and the court of appeals' decision in S.S.T. hold that the best interests of the child standard has marginal or no relevance in a stepparent adoption proceeding, they are disapproved.
[4] To hold that incarceration in this case does not excuse a parent's obligation to provide a reasonable amount of child support is not to say that incarceration justifies termination of parental rights. In Diernfeld v. People, 137 Colo. 238, 244, 323 P.2d 628, 631 (1958), this court ruled that conviction of a felony does not also work a forfeiture of parental rights. See also Ziemer v. Wheeler, 89 Colo. 242, 1 P.2d 579 (1931); In re Brannon, 340 So.2d 654 (La.Ct.App.1976); In re Adoption of V.A.J., 660 P.2d 139 (Okla.1983).
[5] Due process prohibits a state from severing a natural parent's rights in the relationship with the parent's child absent clear and convincing evidence supporting the grounds for termination. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); People ex rel. M.S.H., 656 P.2d 1294 (Colo.1983); People ex rel. C.A.K., 652 P.2d 603 (Colo.1982); People ex rel. A.M.D., 648 P.2d 625 (Colo.1982). Santosky and this court's decisions following Santosky involve state-initiated neglect proceedings, but the requirement for clear and convincing evidence supporting termination is equally applicable to the parental right terminations involved in stepparent-initiated adoption proceedings because the same fundamental liberty interest of the natural parent in the relationship with the child is involved and because the state through its courts acts to sever a parental tie.