23CA2080 Adoption of MJL 05-01-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2080
Mesa County District Court No. 22JA30056
Honorable Douglas S. Walker, Judge

---

In re the Petition of W.M.,

Appellee,

for the Adoption of M.J.L., a Child,

and Concerning J.L.,

Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Tow and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 1, 2025

---

JVAM PLLC, Sean M. Pearman, Quentin H. Morse, Glenwood Springs, Colorado, for Appellee

Bergner Law Office, LLC, Stephanie Bergner, Leif Ericson, Carbondale, Colorado, for Appellant

¶ 1     In this stepparent adoption proceeding, J.L. (father) appeals the judgment terminating his parent-child legal relationship with M.J.L. (the child) in anticipation of an adoption by W.M. (stepfather).  We affirm.

## I.     Background

¶ 2     Father and J.K. (mother) were married in 2012, and the child was born in July 2013.  The parents divorced in 2015.  The domestic relations court awarded mother primary residential custody and sole decision-making authority, while father had supervised parenting time and was required to pay $255 per month in child support.

¶ 3     Mother married stepfather in November 2022, and stepfather filed petitions to adopt the child and terminate father's parental rights a little over a month later.  The juvenile court set the matter for an evidentiary hearing in June 2023.  At the hearing, the evidence established that father had not attended his supervised parenting time since October 2015, and except for a single support payment of $25 in May 2022, he had not paid any child support since January 2020.  In response, father presented evidence that he

had tried to communicate with mother to set up visits over the years, but she ignored his requests.

¶ 4    Following the hearing, the juvenile court entered a written ruling, finding that father had abandoned the child for one year or more and had failed without cause to provide reasonable support. *See* § 19-5-203(1)(d)(II), C.R.S. 2024 (describing the two ways a child may be available for adoption in a stepparent adoption proceeding).  However, the court recognized that it had erroneously prevented the parties from presenting evidence about whether adoption was in the child's best interests, and it therefore decided to hold a second hearing so that the parties could present additional evidence before it made a final ruling.  *See In re Petition of R.H.N.*, 710 P.2d 482, 485 (Colo. 1985) (noting that, in addition to a determination of whether a child is available for adoption, a court must also consider "whether the best interests of the child are served by the termination of the natural parent's rights and by the adoption").

¶ 5    The juvenile court held the second hearing in November 2023.  After hearing the evidence, the court entered a written judgment incorporating its findings from the first hearing and determining

2

that it was in the child's best interests to terminate father's parental rights so the child could be adopted by stepfather. Among other things, the court considered evidence that father had failed to visit or pay child support (including no support between the two hearings); the child wanted to be adopted, did not know her biological father, and considered stepfather to be her father; and father had committed domestic violence while the parents were married. The court then terminated father's parental rights.[1]

## II.   Notice

¶ 6     Father first asserts that the juvenile court violated his due process rights by failing to provide him with notice of the proceeding as required by section 19-5-203(1)(d)(II). We disagree.

¶ 7     Because parents have a constitutionally protected liberty interest in the care, custody, and management of their children,

---

[1] The juvenile court did not initially determine whether the provisions of the Indian Child Welfare Act (ICWA) applied to this case. *See People in Interest of N.B.*, 199 P.3d 16, 19-20 (Colo. App. 2007) (recognizing that ICWA applies in stepparent adoption proceedings). We issued a limited remand for the court to consider ICWA. On remand, the court made inquiries of the parties, directed stepfather to send notices to the appropriate tribes, and found that the child was not an Indian child. No party challenges the court's conclusion.

due process requires the state to provide fundamentally fair procedures to a parent facing termination in a stepparent adoption proceeding. *See People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶¶ 17-18; *In re E.R.S.*, 2019 COA 40, ¶ 41. These procedures require that a parent be given notice of the proceeding and a meaningful opportunity to be heard and to defend. *See E.R.S.*, ¶ 41. However, a parent may not obtain relief on a procedural due process claim absent a showing of harm or prejudice. *People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007). We review due process claims de novo. *People in Interest of R.J.B.*, 2021 COA 4, ¶ 26.

¶ 8 Section 19–5–203(1)(d)(II) requires that, upon the filing of a petition for a stepparent adoption, a notice shall be issued by the juvenile court directed to the noncustodial parent, which states (1) the nature of the relief sought, (2) the names of the stepparent and the child, and (3) the time and place set for the hearing on the petition. A court should hold an evidentiary hearing "as soon as possible," § 19-5-210(2), C.R.S. 2024, but not less than thirty-five days after the noncustodial parent receives notice of the proceeding, § 19-5-203(1)(d)(II).

4

¶ 9    Shortly before the first hearing, father moved for a continuance, arguing, in part, that, because the juvenile court had not issued a notice as required by section 19-5-203(1)(d)(II), he was entitled to a continuance of at least thirty-five days for the court to comply with the statute. Although the court acknowledged that it "did not send out a notice as required by statute," it nevertheless denied the continuance because stepfather had served father with notice of the proceeding.

¶ 10   Based on the record described below, we conclude that any error resulting from the fact that the juvenile court did not itself send father notice of the proceeding is harmless because father had actual notice of each of the requirements in section 19-5-203(1)(d)(II). *See* C.A.R. 35(c) (An "appellate court may disregard any error or defect not affecting the substantial rights of the parties."); *cf. People in Interest of A.B-A.*, 2019 COA 125, ¶ 63 (noting that the parent's actual notice of the proceeding through his communication with the caseworker did not cure the error because the caseworker did not provide father with any information about his rights or explain that termination was a possible remedy).

¶ 11    The record shows that stepfather served father with a "Notice of Adoption Proceeding and Summons to Respond"; the petition for adoption, the petition for termination, an affidavit for abandonment, and a consent to adoption by mother; and a notice of an initial hearing on April 3, 2023.  These documents informed father of the nature of the relief sought — termination of his parental rights and adoption by stepfather — and listed the names of the stepparent and the child.  *See* § 19-3-203(1)(d)(II).  They also informed father of the allegations against him, namely that (1) he had failed without cause to provide the child with reasonable support for a period of one year or more and abandoned the child for one year or more, *see id.*, and (2) termination and adoption were in the child's best interests, *see R.H.N.*, 710 P.2d at 485.

¶ 12    What's more, the record clearly shows that father had notice of the proceedings and the hearings in this case.  For example, father appeared pro se at the initial hearing and admitted that he had received the documents described above and had notice of the hearing.  He requested a continuance to retain counsel and respond to the petition, which the juvenile court granted.  Father then retained counsel, who appeared in court and agreed to set the

matter for an evidentiary hearing in June 2023. Father's counsel filed a response to stepfather's petition, contesting the allegations that he had abandoned the child, that he had failed without cause to provide reasonable support, and that termination and adoption were in the child's best interests.

¶ 13     We are not persuaded otherwise by father's assertions that the juvenile court violated due process by failing to advise him of his rights or ask him whether he could afford an attorney. In dependency and neglect proceedings, for example, the Colorado Children's Code and Colorado Rules of Juvenile Procedure require the court to advise parents on several matters, including the nature of the allegations against them, the right to counsel, and that the proceeding could result in termination of their parental rights. *See* §§ 19-3-202(1), 19-3-602(2), C.R.S. 2024; C.R.J.P. 4.2. But neither the Children's Code nor the Colorado Rules of Juvenile Procedure provide any requirement that the court similarly advise a parent in a stepparent adoption proceeding. And father has not directed us to any authority requiring such an advisement.

¶ 14     Consequently, because father had notice of the proceeding and a meaningful opportunity to defend, he cannot establish that he

was prejudiced because the juvenile court did not send the notice as required by section 19-5-203(1)(d)(II). *See J.A.S.*, 160 P.3d at 262; *see also Gessler v. Smith*, 2018 CO 48, ¶¶ 43-44 ("[E]ven if the notice here was insufficient, the Secretary has not shown how he was prejudiced."); *In re Estate of Kochevar*, 94 P.3d 1253, 1256 (Colo. App. 2004) (noting that if the parties had notice "in sufficient time to afford them a full opportunity to be heard on the matter, there was no prejudice to them and thus no due process violation").

### III. The Child's Best Interests

¶ 15 Father next asserts that the juvenile court erred by (1) prohibiting him from presenting evidence concerning the child's best interests during the first hearing; (2) allowing stepfather a second opportunity to establish that termination and adoption were in the child's best interests; and (3) finding that the child was available for adoption without considering the child's best interests. We disagree with all three contentions.

¶ 16 Stepparent adoption proceedings in Colorado have sometimes been characterized as a two-step inquiry, in which the juvenile court (1) "must first determine whether the adoption is in the best interests of the child" and (2) "then must determine whether a child

8

is available for adoption." *D.P.H. v. J.L.B.*, 260 P.3d 320, 323 (Colo. 2011); *but see R.H.N.*, 710 P.2d at 485 (noting that the court "must address at the same time a number of factors," including whether the child's best interests are served by termination and adoption and the child is available for adoption).

¶ 17    During the first hearing, father's counsel stated that she intended to introduce evidence that mother "had multiple boyfriends" and therefore adoption by stepfather may not result in a "stable relationship" for the child. Counsel asserted that this evidence went to whether adoption by stepfather would serve the child's best interests. The juvenile court declined to allow counsel to pursue this line of questioning, stating that "we are here at this point on the termination portion of this case." Father's counsel also attempted to ask father whether he had any concerns about the child's stability with stepfather, but the court excluded the evidence because it was "beyond the scope of the termination hearing."

¶ 18    In its ruling following the first hearing, the juvenile court recognized that it "did not allow the parties to argue the merits of any adoption by [stepfather]", and it admitted that it had "wrongly believed that the hearing should be bifurcated with the termination

9

hearing." However, the court realized that it could not "terminate a biological parent's rights, in a stepparent adoption case, without first finding that the adoption by a stepparent is in the best interest of the child." It further recognized that, generally, the issues could be resolved in a single hearing but concluded that there was "nothing inherently unfair about holding the hearings on two separate dates." Therefore, the court continued the matter to a second date so that the parties could present additional evidence about whether the adoption would be in the child's best interests.

¶ 19     First, we agree with father that the juvenile court erred by excluding evidence of whether adoption would be in the child's best interests during the first hearing because it was relevant to whether the court could terminate father's parental rights and make the child available for adoption. *See D.P.H.*, 260 P.3d at 323; *R.H.N.*, 710 P.2d at 485; *see also* CRE 401 (describing relevant evidence). However, any error was harmless because the court recognized its mistake, held a second hearing, and allowed father to present the evidence that was excluded in the first hearing. *See People in Interest of M.V.*, 2018 COA 163, ¶ 66 (noting that a court's erroneous evidentiary ruling is harmless if it does not affect a

10

substantial right of the party), *overruled on other grounds by People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42. We therefore discern no reversible error.

¶ 20    Next, father asserts that the juvenile court erred by giving stepfather a second chance to present evidence about the child's best interests. He maintains that, because stepfather did not meet his burden after the first hearing, the court was required to deny the petition. However, stepfather contends, and we agree, that the court had discretion to continue the matter to a second hearing under section 19-5-210(4). That section says "[i]f, after the hearing, the court is not satisfied as to the matters listed in subsection (2) of this section, the petition for adoption may be either continued or dismissed in the discretion of the court." Among the "matters listed in subsection (2)" is "[t]he fact that the best interests of the child will be served by the adoption." Father provides no explanation as to why section 19-5-210(4) does not control or direct us to any contrary authority.

¶ 21    Finally, father asserts that the juvenile court erred because it found that the child was available for adoption without considering

the child's best interests.[2] He contends that because the court did not consider the evidence of the child's best interests until the second hearing, after it had already made findings as to the child's availability for adoption, the court could not have viewed the evidence in the light of the child's best interests. We disagree.

¶ 22 The record shows that although the juvenile court excluded evidence about whether it would be in the child's best interests to be adopted by stepfather, it did not exclude *all* evidence of the child's best interests. For example, the court allowed testimony about whether it would be in the child's best interests for father to retain his parental rights, and in doing so, the court stated that "the best interests of the child [are] always relevant in these cases." In other words, it appears that the court only excluded evidence

---

[2] Father does not independently challenge whether the evidence was sufficient to establish that the child was available for adoption under section 19-5-203(1)(d)(II), only whether the court had to simultaneously consider best interests. Nor is it clear to us whether his assertion relates only to the court's abandonment finding or to both the abandonment finding and the failure to provide reasonable support finding. *See In re E.R.S.*, 2019 COA 40, ¶ 61 (noting that abandonment and failure to provide reasonable support are separate and independent grounds for declaring a child available for adoption). For the purposes of this opinion, we will presume it is the latter.

about whether it would be in the child's best interests to be adopted by stepfather and otherwise permitted testimony about the child's best interests in connection to her relationship (or lack thereof) with father. Consequently, we conclude that, even considering only the testimony presented at the first hearing, there was sufficient evidence before the court to consider whether the child was available for adoption.

## IV. Disposition

¶ 23    The judgment is affirmed.

JUDGE TOW and JUDGE SCHUTZ concur.