No. 16,356.

MOREAU *v.* BUCHHOLZ ET AL.

(236 P. [2d] 540)

Decided October 1, 1951.

MR. CLAUDE W. BLAKE, for plaintiff in error.

Mr. HUGH GILMORE, Mr. JOHN B. BERNARD, for defendants in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the court.

THIS is an adoption proceeding presented here for review by writ of error from the district court of Grand county, where it was tried de novo on appeal from the county court of said county. Defendants in error were

petitioners in the action, and we will hereinafter refer to them as plaintiffs, or by name. Plaintiff in error appeared below as respondent and is herein designated as defendant. Upon trial in both the district and county courts, plaintiffs prevailed.

Plaintiff Florence C. Buchholz was formerly the wife of defendant. To them was born a child, Susan Ida, who is the subject of this controversy. Divorce proceedings in the State of Oregon resulted in a decree in favor of Florence by which she was awarded the custody of Susan Ida—subject to further order of court—with the right to defendant of visitation with said child at all reasonable times, so long as such visitation did not interfere with her education and welfare. Further, by said decree, defendant was required to pay $50.00 per month for the maintenance and support of the child, which payments apparently were made promptly pursuant to said requirement from the date of said decree in May, 1944, until January, 1947, at which time they abruptly ceased. In March, 1945, on account of the condition of health of the child, Florence left Oregon, went to Riverton, Wyoming, and took up residence with her sister, such arrangement being with the consent and approval of defendant. Defendant had long previously remarried; in September, 1946, Florence married Frank J. Buchholz at Riverton, Wyoming, and in April, 1947, they moved to Grand Lake, Colorado. Defendant was not advised as to the marriage or change of residence, but through a mutual friend learned of the remarriage of his former wife sometime during the fall of 1946. Letters and remittances addressed to Florence at Riverton continued to be received by her through a forwarding address left at the post office at Riverton. It is conceded that the last payment under the maintenance order was made in January, 1947; also, that in July of that year the little girl received, through her mother, from her father a bathing suit. Other than this, the evidence was in conflict, defendant claiming that he had written at

least one other letter to which he had received no response and contending that he ceased making payments for the reason that Florence did not answer his inquiries relative to the child. This is denied by Florence, who insists that she replied to every note of inquiry ever sent her by the defendant, although admitting that she made no other effort to keep him advised.

In the complaint plaintiffs charge abandonment of said child on the part of her father and on account thereof assert that his consent to the adoption or notice of the proceeding is unnecessary, and not required under the statute. Final judgment in the district court was entered on the 29th day of December, 1948. The trial court rendered an opinion (designated by it as a decision), and likewise findings, conclusions and decree, in which it specifically found, determined and adjudged that defendant had abandoned said minor child prior to the commencement of the proceeding in the trial court. The issue of abandonment is the question seriously presented in this court.

Defendant sets forth eight specifications of points, which may be considered under three headings, two of which are procedural: (1) That the trial court erred in refusing to grant defendant's motion for a new trial; (2) that the trial court abused its discretion in refusing to grant an enlargement of time within which to lodge the reporter's transcript; (3) that the trial court erred in its conception of the law with respect to the term "abandoned" as used in the statute, and applied it improperly, and that under the law as properly construed and applied, the evidence is insufficient to support the findings and judgment of the court. We shall discuss these in order.

In its final decree the trial court found, and set forth specifically, that a motion for a new trial was unnecessary and directed that it be dispensed with. Notwithstanding this order, a motion for a new trial was filed on January 7, 1949, within the period prescribed

by the rules of civil procedure, and later by stipulation, was submitted without argument and denied by the court on June 10, 1949. The entry of an order by the trial court dispensing with the filing of a motion for new trial is in effect a denial of such motion, and if such motion be filed regardless, and without leave of court being first had and obtained, it should be stricken. *Dickson v. Horn,* 89 Colo. 234, 237, 1 P. (2d) 96. If it be contended that regardless of this rule the motion for new trial was properly filed on the basis of newly discovered evidence, the answer is that in this respect it did not conform with the rules in that it was not supported by any affidavit.

Assuming the propriety of the filing of the motion for new trial, the time fixed by rule for the lodging of the reporter's transcript with the clerk of the court would normally have expired on August 10. No motion for enlargement of time was made within that period. The transcript was not ordered until October 22, and was not lodged with the clerk until November 16, 1949. On November 29 plaintiffs' attorneys filed in the trial court their objections to the signing and certifying of the transcript for the reason that it was not lodged within the sixty-day period as provided by Rule 112 (f) R.C.P. Colo. Not until in January, 1950, did defendant file his verified motion seeking enlargement of time for lodging the reporter's transcript based on Rule 6 (b), R.C.P. Colo., and asking that the order be entered nunc pro tunc as of August 10, 1949, enlarging the time to November 16, being the date on which the transcript actually was lodged. This motion was argued before the court and overruled on February 6, 1950, which action of the court also is here specified as error.

██ ██ By amended Rule 111 (c) it is provided that a writ of error may be procured in one of two ways: (1) By filing a precipe for a writ of error in the Supreme Court; (2) by filing in the Supreme Court a record of the proceedings of the trial court prepared in compli-

ance with Rule 112. In this instance defendant took the first method, and obtained from this court on October 7, 1949, its writ of error directed to the trial court upon precipe followed by summons to hear error, copy of which was receipted for by plaintiffs' attorneys on October 21st. A proceeding in this court upon writ of error is not a continuation of the case as presented in the trial court, but is the commencement of a new action. *Wise v. Brocker,* 1 Colo. 550; *Webster v. Gaff,* 6 Colo. 475, followed in *Stout v. Gully,* 13 Colo. 604, 606, 22 Pac. 954; *Rudolph v. Rudolph,* 50 Colo. 243, 245, 114 Pac. 977. Following commencement of the new action in this court by procurement of writ of error herefrom, the trial court was without further authority to grant the motion for enlargement of time. Such extension if desired could come properly only by order of this court; such is within the contemplation of the rule to which we have above referred, and which provides that the record of the case shall be certified to this court within sixty-days from the receipt of the writ of error, "or within such additional time as the supreme court may order." Amended Rule 111 (c), R.C.P. Colo. It is clearly apparent that the trial court was entirely without authority, and did not in anywise abuse its discretion in refusing to enter an order purporting to enlarge the time following issuance of the writ of error from this court.

█ Other points specified, upon which it is contended reversal of the judgment in this case should be had, are determinable only by reference to the transcript of the evidence. The transcript is here supported by only the certificate of the reporter, its authenticity as provided by rule to be vouched for by the proper certificate of the trial judge not appearing. Notwithstanding its lack of proper authentication and the fact that there is in truth no proper record before us, and regardless of the fact that counsel for plaintiffs persist in their objection to the consideration of the record of evidence, we are urged to by-pass these legal landmarks and give con-

sideration to the entire matter on its merits. Lest exception be taken to our comment that we have before us no proper record, attention again is called to the case of *Dickson v. Horn, supra,* wherein we said: "The bill of exceptions [the reporter's transcript under present Rules of Procedure] not having been prepared and tendered within the time fixed and allowed by the court, nor within the time limited by any proper extension thereof, and when timely objections thereto have been made, cannot be considered by this court." Page 237, citing Colorado cases to the same effect.

Timely objections were here made, and still are insisted upon. Nevertheless, we have given considerable study and attention to the transcript, insufficient and improper as it is, that we might determine whether or not substantial error on the part of the trial court entered into its deliberations and conclusions.

Counsel for defendant is correct in his assertion that in this case, and under our statute, the decree of adoption cannot be permitted to stand where defendant does not consent, without evidence sufficient to support the findings, conclusions and decree of the trial court to the effect that defendant abandoned his child. It is contended that the trial court misconceived the meaning of the term "abandoned," and based his determination to this effect upon the circumstance that defendant had ceased payments of the monthly installments for the maintenance of the child some seventeen months prior to the commencement of this action in the county court. Further, it is said that, where custody of the child was granted to the mother in a divorce proceeding, the father may not be declared to have abandoned his child even though he does cease to make payments as required under the custodial order for its support. It is said by counsel for defendant that the trial court here confused the issue of abandonment with others proper only for consideration in determination of custody, and that reliance may not be had upon the case of *Graham v.*

*Francis,* 83 Colo. 346, 265 Pac. 690, for the reason that in that case custody, and not adoption, was the issue.

■ We have read and considered decisions from various jurisdictions, and find a considerable lack of unity both in the form of controlling statute and in the rule maintained in the jurisdictions of the respective courts. In the case of *Graham v. Francis, supra,* there was involved not only the question of custody, under the habeas corpus proceedings, but likewise the question of adoption under the original proceeding, all of which were combined for purposes of trial. In 1 American Jurisprudence, page 642, section 41, is the statement: "The right of a parent with respect to his child is not an absolute paramount proprietary right or interest in or to the custody of the infant." In some jurisdictions, in adoption proceedings, the respective parental rights are given first consideration by the courts, whereas, in others, the primary, paramount and controlling objective in such proceedings is the welfare of the child, unless by a decree in adoption a worthy parent. guilty of no material or excusable fault be thereby deprived of parental privileges. In *Graham v. Francis, supra,* if not specifically stated in so many words, it certainly is strongly indicated that under the rule in Colorado, the primary consideration is the welfare of the child, and secondly, the rights of the parents.

■ We have no criticism to offer of the doctrine announced in many decisions, that in cases of this character the court must first find abandonment before it need pay attention to whether or not the adoptive parents are of such character as to insure the continued welfare and increased benefits to the child. It is not, however, the rule in Colorado that the trial court in considering abandonment must close its eyes to every interest of the child, and consider only the rights of the parents.

Abandonment is primarily a question of intent. It is more often determined by what one does rather than by what he says. While the contention in this case is that

the trial court found abandonment solely by reason of failure of defendant to pay maintenance installments, in this contention counsel is not supported by the record. There are other features by which the court might determine the failure of proper interest and lack of affection and regard on the part of the defendant for this child. These things the court undoubtedly took into consideration. The evidence is complete in this regard. Among the features present, one particularly that strikes us as at least peculiar is that defendant, if any credence is to be given to his assertion that in order to punish his former wife for her alleged failure to reply to his communications, he took out his vengeance in punishment of his child by depriving her of the funds directed to be made available for her maintenance. This was his obligation under the custodial order of the Oregon court, and his duty as a parent. He offered as an excuse, no inability to pay, or otherwise, except that he thought this might teach the mother to answer his notes of inquiry. A couple of months of such delinquency certainly must have disclosed the failure of his plan, and a proper regard for his child should have dictated the resumption of payments. On its face, the whole defense in this respect has the appearance of afterthought designed to excuse defendant for his shortcomings where the actual facts of the matter would indicate the contrary.

The trial court was privileged not only to hear the witnesses testify, but also to see them and to observe their conduct and actions while in the court room and on the witness stand. That he proceeded in logical manner first to determine the issue of abandonment and then declare that the future welfare of the child required that a decree of adoption be entered, is clearly shown by his findings and conclusions. There is evidence in the record to support the court's conclusions, findings and decree, and such is as far as we are privileged to consider the matter. "The trial court is the judge, not only of the credibility of the witnesses and of the weight

of the evidence, but of the inferences properly deducible from the facts and circumstances proven at the trial. On review, the record is viewed in the light most favorable to the party successful in the trial court, and every inference fairly deducible from the evidence is drawn in favor of the judgment." *Schick v. Pritchard,* 89 Colo. 132, 133, 299 Pac. 1061.

The judgment of the trial court is affirmed.