206 P.3d 467 (2009)
In the Matter of the Petition of J.A.V., Petitioner-Appellee, and
R.S.F., Appellant, and
Concerning N.K.B., a Child.
No. 07CA2169.
Colorado Court of Appeals, Div. I.
March 5, 2009.
Davide C. Migliaccio, Colorado Springs, Colorado; Lynn L. Olney, Colorado Springs, Colorado, for Petitioner-Appellee.
Anne Whalen Gill, LLC, Anne Whalen Gill, Sharlene J. Aitken, Castle Rock, Colorado, for Appellant.
Opinion by Judge TAUBMAN.
R.S.F. (father) appeals from the district court order adopting the magistrate's order that found father abandoned his daughter, N.K.B., and, based on that finding, granting J.A.V.'s petition for stepparent adoption of N.K.B. We reverse and remand.

*468 I. Background
Father and mother are the natural parents of N.K.B., who was born in June 2004. The parties subsequently became involved in three separate cases, the third of which is the stepparent adoption at issue here.
In the first case, in May 2005, father filed a pro se petition for allocation of parental responsibilities. In January 2006, father, then represented by counsel, filed a motion to modify parenting time, a motion for appointment of a child and family investigator (CFI), and a motion to continue a February 2006 hearing. The district court granted the continuance until April 2006, and later granted a continuance requested by mother, scheduling a hearing for September 2006. Shortly before that hearing, mother again moved to continue, this time because the stepparent adoption proceeding had been filed.
The second case was a county court restraining order proceeding filed by mother against father in May 2005. The court, through a magistrate, entered a temporary protection order providing that father was to have no contact with mother or N.K.B. Following a June 2005 permanent protection hearing, the magistrate entered an order providing that father was prohibited from having contact with N.K.B., except for e-mail contact with mother to discuss N.K.B.'s well-being and emergencies.
In October 2005, a second magistrate entered a supplemental order which continued the no-contact order in effect, but apparently also precluded father from having e-mail contact with mother concerning N.K.B.
In the third case, in August 2006, stepfather filed this stepparent adoption proceeding less than three weeks after his marriage to mother. Following a hearing, a third magistrate granted the stepparent adoption in April 2007, and a district court judge different from the one involved in the parental responsibilities case denied father's petition for review of the magistrate's order in September 2007. This appeal followed.

II. Abandonment
Father contends that clear and convincing evidence did not establish that he intentionally abandoned N.K.B., but rather showed that he sought to exercise parental rights and supported her. We agree.
Section 19-5-203(1)(d)(II), C.R.S.2008, provides for a stepparent adoption if, as relevant here, a parent has abandoned the child for at least one year before the petition was filed. Thus, the relevant time period for determining abandonment here is the one-year period between August 2005 and August 2006.
The clear and convincing evidence standard applies to the determination of abandonment in a stepparent adoption proceeding because the adoption involves the fundamental liberty interest of the parent in the relationship with the child. In re I.R.D., 971 P.2d 702, 705 (Colo.App.1998).
Although the statute does not define abandonment, that word has been defined elsewhere as "the relinquishing of a right or interest with the intention of never again claiming it." Black's Law Dictionary 2 (8th ed.2004). In the family law context, it is defined as "the act of leaving a spouse or child willfully and without an intent to return." Id. See also St. Clair v. Faulkner, 305 N.W.2d 441, 447 (Iowa 1981) (court finds no abandonment of daughter by father, relying on similar definition of abandonment in earlier edition of Black's Law Dictionary).
Abandonment is primarily a question of intent. Moreau v. Buchholz, 124 Colo. 302, 309, 236 P.2d 540, 543 (1951). Because the statute does not establish substantive criteria to determine abandonment, the trial court must examine the totality of the circumstances, viewed in light of the best interests of the child. In re J.D.K., 37 P.3d 541, 543 (Colo.App.2001); In re G.D., 775 P.2d 90, 92 (Colo.App.1989). In so doing, the court may not find abandonment unless the totality of the circumstances shows the natural parent has left the child willfully without an intent to return.
This court may reverse a district court order adopting a magistrate's order if a critical finding of the magistrate is clearly erroneous. *469 People in Interest of R.A., 937 P.2d 731, 736 (Colo.1997).
Here, the magistrate found that father "took no actions to pursue this relationship or have access to his daughter in spite of a clear court record that ability to have access to the child was afforded by the Court to [father]." The magistrate supported this conclusion with the following factual findings. She found that a June 2005 permanent protective order gave father permission to e-mail the biological mother, but he never took advantage of this opportunity. In the parental responsibilities case, he also did not request a hearing on his motion to establish parenting time with the child and did not pursue that motion until approximately six months later. The magistrate concluded that even though mother had renewed her permanent protective order in October 2005, "under no circumstances was ... father ever denied the ability to pursue his due process rights and request the establishment of a relationship with his daughter."
In reaching this determination, the magistrate considered the age and development of the child and found the testimony of father not to be credible.
Because some of these critical findings are not supported by the evidence, we conclude that the determination that father abandoned the child cannot stand. See id.
Father was restricted by the June 2005 permanent protective order to contacting mother only through e-mail to inquire about the child. By October 2005, he was precluded from contacting mother at all. Thus, for most of the one-year period prior to the filing of the petition for stepparent adoption, father was under a court order prohibiting any meaningful contact concerning the child.
However, in May 2005, father had filed the petition for allocation of parental responsibilities, which was scheduled for a hearing in February 2006. His counsel also filed a motion to modify parenting time in January 2006. Although father obtained a continuance of the February 2006 hearing and did not object to mother's April 2006 motion to continue, he objected to mother's September 2006 request for another continuance. Over father's objection, the parental responsibilities case was stayed in October 2006.
In ignoring father's efforts to obtain parenting time with his child, the magistrate and the district court erred by not properly applying the definition of abandonment. As noted, abandonment requires leaving a child willfully and without an intent to return. Regardless of whether father might have done more to enforce his rights, the record demonstrates that he did not intend to abandon his rights with respect to his child.
To the extent that the trial court's order in the parental responsibilities case impacted the result in this case, we note that the court there was not required to stay that case pending the outcome of this stepparent adoption proceeding. Had the court not stayed the parental responsibilities case, it could have awarded father parenting time. Had it done so, the magistrate could not have later concluded that father had abandoned his child for a period of one year.
When the parental responsibilities case was scheduled for a hearing in October 2006, the trial court ruled:
Although the Court believes that judicial economy is not served by continuing this matter until [the stepparent adoption petition] has been determined, the Court believes that [the stepparent adoption petition] must be determined before the Court hears the Permanent Orders on Petitioner's Petition for Allocation of Parental Rights and Responsibilities in this matter. The Court's decision is not based [on] its determination relative to the validity of [the stepparent adoption petition], but as a matter of law the Court has determined that [the stepparent adoption petition] must be resolved prior to the Court making permanent determinations regarding parental rights and responsibilities. For this reason, the Court grants [mother's] motion to continue the hearing in this matter.
Further, once the trial court in the parental responsibilities case stayed those proceedings, the magistrate in the stepparent adoption case was not required to act; the magistrate could have disagreed with the trial court in the parental responsibilities *470 case and urged that court to act. See State v. Pena, 911 P.2d 48, 57 (Colo.1996) (district court is without supervisory power over courts of coordinate jurisdiction).
Absent a showing of endangerment, father was entitled to reasonable parenting time with his daughter. See People in Interest of S.E.G., 934 P.2d 920, 921 (Colo.App.1997). Therefore, we conclude that the magistrate erred in deferring to the stay in the parental responsibilities case and proceeding with the stepparent adoption absent a prior resolution of father's motion for parenting time. See § 19-1-104(4), C.R.S.2008 ("[n]othing in this section shall deprive the district court of jurisdiction ... to determine the legal custody of a child ... when the question of legal custody is incidental to the determination of a cause in the district court"); People in Interest of T.R.W., 759 P.2d 768 (Colo.App. 1988) (if a child is not dependent or neglected, the juvenile court cannot retain exclusive jurisdiction or rule on a motion for modification of custody filed under the Uniform Dissolution of Marriage Act); see also In re Adoption by J.J.P., 175 N.J.Super. 420, 419 A.2d 1135 (App.Div.1980) (any adverse emotional consequences possibly related to future contact are purely speculative and outweighed by the ultimate undesirability of permanent destruction of the potential relationship between the child and her biological father).
By acceding to the trial court's stay in the parental responsibilities case, the magistrate effectively determined the outcome of this stepparent adoption proceeding.
Thus, while father could have taken other steps to obtain information about the child or more aggressively pursued parenting time, we conclude under the circumstances here that a determination of abandonment was precluded by the efforts he made in the parental responsibilities case. Cf. In re T.C.H. v. J.M.S., 190 Colo. 246, 248, 545 P.2d 1357, 1359 (1976) (evidence did not support trial court's finding of failure to support without cause, as strict compliance with the stepparent adoption procedure is required because of the harshness of permanently terminating parental rights), disapproved of in part by In re R.H.N., 710 P.2d 482, 486 n. 3 (Colo.1985).

III. Other Contentions
Because of the disposition we have reached, we need not address father's other contentions.
The order terminating father's parental rights is reversed. The case is remanded with instructions for the parties, as ordered in the stay of the parental responsibilities case, to contact the court in that case for priority settings and for father to retain and pay for, subject to later allocation, a CFI prior to the permanent orders hearing in this stepparent adoption proceeding.
Judge ROMÁN and Judge LICHTENSTEIN concur.