260 P.3d 320 (2011)
D.P.H. and A.J.B., Petitioners
v.
J.L.B., Respondent and
Concerning A.B., Minor Child.
No. 10SC104.
Supreme Court of Colorado, En Banc.
September 12, 2011.
*321 Pearman Law Firm, P.C., Daniel M. Westhoff, Shaun Pearman, Rachel Anderson, Wheat Ridge, Colorado, Attorneys for Petitioners.
Levin & Jacobson, LLC, Don D. Jacobson, Denver, Colorado, Attorneys for Respondent.
Justice EID delivered the Opinion of the Court.
The juvenile court found that Respondent J.L.B. ("Father") had abandoned A.B. (the "Child") and that therefore the Child was available for adoption by Petitioner D.P.H. ("Stepfather"). The juvenile court also determined that the fact that Father had filed parenting-time motions in the dissolution court did not outweigh overwhelming evidence of abandonment, including the fact that Father had not seen the Child in the twenty-one months prior to the filing of the adoption proceeding.
Father appealed to the court of appeals, which reversed. The court determined that a finding of abandonment was precluded by the fact that Father had filed motions for parenting time in the dissolution court. The court also concluded that the juvenile court should have delayed the adoption determination until the parenting-time motions were resolved. See In re D.P.H., No. 08CA2207, slip op. at 5-8, 2009 WL 3043671 (Colo.App. Sept. 24, 2009) (not selected for official publication).
We granted certiorari,[1] and now reverse. The abandonment inquiry focuses on whether, under the totality of the circumstances, the parent's intent during the twelve months preceding the commencement of the adoption proceeding was to abandon the child. It is the trial court's responsibility to consider the totality of the circumstances and to make this factual determination, which is to be disturbed only if it is clearly erroneous. Here, the evidence before the juvenile court of Father's intent during the relevant twelve-month period was conflicting. It was therefore *322 error for the court of appeals to determine that a single circumstancethat is, the filing of the parenting-time motionsprecluded a finding of intent to abandon, essentially as a matter of law.
Although the juvenile court in this case determined that Father had abandoned the Child, it did not expressly determine whether, under the totality of the circumstances, the Father's intent during the twelve-month period was to abandon the Child. We therefore remand the case to the juvenile court to make such a determination.
We also address the issue of whether it was necessary for the juvenile court to delay ruling in the adoption proceeding pending the outcome of the parenting-time motion in the dissolution court, as it will arise on remand. We hold that it is not necessary for a juvenile court to delay the adoption proceedings as long as it adequately considers the parenting-time motion in making the abandonment determination. Accordingly, we reverse the court of appeals and remand the case for further proceedings.

I.
Father and A.J.B. ("Mother") married on April 9, 2004, separated on July 1, 2005, and divorced on May 17, 2006. The Child was born on September 9, 2004. At the time of the divorce, the court ordered Father and Mother to participate in mediation to develop a parenting plan. Mediation never occurred, no parenting-time order was ever entered, and Father has only seen the Child five times since separating from Mothermost recently in June 2006. The magistrate who presided over the divorce awarded sole allocation of decision-making responsibilities for the Child to Mother, and the Child was to live with her. Mother married Stepfather in October 2007, and the Child continues to live with them. In April 2008, Stepfather, with Mother's consent, filed an adoption petition in juvenile court seeking to adopt the Child.
In an apparent attempt to obtain a parenting-time order, Father filed two pro se motions in the dissolution court for contempt in December 2007 and March 2008. Both of these motions were denied; the first because it did not show how Mother had failed to comply with the court's order, and the second because it was incomplete and unsigned. A third motion, a Verified Motion for Order Enforcing Parenting Time and for Sanctions, was later filed by Father with the assistance of an attorney, forty-seven days after the adoption petition was filed.
In assessing the validity of the adoption petition, the juvenile court observed that there are two ways to make a child available for adoption without the consent of a parent: (1) by showing a lack of financial support for one year; or (2) by showing abandonment for a period of one year. See § 19-5-203(1)(d)(II), C.R.S. (2010). In this case, the only issue was whether Father had abandoned the Child.
In testimony before the juvenile court, Father admitted that he had seen the Child only a few times since separating from Mother and that all of these contacts were relatively brief. In addition, Father testified that he had not seen the Child after June 2006, more than twenty-one months before the petition for adoption was filed, nor did he send cards, letters, or gifts to the Child during that time. The trial court found that Father "[wa]s a stranger to the [C]hild."
Father testified that he did not intend to abandon the Child, however, and stated that his lack of contact with the Child was caused by the fact that Mother had interfered with him seeing the Child. Out of "[f]rustration," he testified, he stopped attempting to see the Child, and instead he "decided to try and reestablish [him]self, went out and got a different job, higher paying, a little bit more pay to it. [And he] [a]lso went out and got [his] own residence with a roommate."
The juvenile court in this case concluded from this evidence that Father "ha[d] abandoned the [C]hild." The court found "[Mother's] testimony credible that she did not prevent [Father] from visiting [the Child]. [Father] always knew where [the Child] was, he simply chose not to see [the Child]." Further, the court found that "certain reasonable conditions were placed on [Father] by [Mother] before he could see the [C]hild, such as [the condition that Mother] needed to supervise a visit." The court recognized *323 that "[t]hese conditions may have made [Father] uncomfortable, but . . . did not preclude him from seeing [the Child] and developing a healthy relationship with [the Child]." The court noted that it had considered the fact that Father had filed motions for parenting time in the dissolution case. However, the court found that the filing of the parenting-time motions was outweighed by overwhelming evidence of abandonment. "[Father] has shown no ability to give the appropriate attention to his parental responsibilities. The result of [Father's] choices is to have [a child] who does not even know him." The court concluded that "[Father] simply does not have a relationship with the [C]hild and that is the bottom line when considering whether abandonment has occurred."
Based on this evidence, the juvenile court determined that Father had abandoned the Child. It then terminated Father's parental rights and granted Stepfather's adoption petition.
Father appealed the juvenile court's ruling on the grounds that his pending parenting-time motion precluded a finding of abandonment, and that the juvenile court should have delayed ruling on the adoption proceedings pending the outcome of his parenting-time motion. The court of appeals agreed and reversed the juvenile court's ruling. Basing its decision on In re J.A.V., 206 P.3d 467 (Colo.App.2009), the court of appeals held that Father's act of filing a motion for parenting time in the dissolution court precluded a finding of abandonment, and that the juvenile court should have awaited the outcome of the motion before proceeding with the adoption petition.
Stepfather and Mother now challenge the court of appeals' ruling, and we reverse. The abandonment inquiry focuses on whether, under the totality of the circumstances, the parent's intent during the twelve months preceding the commencement of the adoption proceeding was to abandon the child. It is the trial court's responsibility to consider the totality of the circumstances and to make this factual determination, which is to be disturbed only if it is clearly erroneous. Here, the evidence before the juvenile court of Father's intent during the relevant twelve-month period was conflicting. It was therefore error for the court of appeals to determine that a single circumstancethat is, the filing of the parenting-time motionsprecluded a finding of intent to abandon, essentially as a matter of law.
Although the juvenile court in this case determined that Father had abandoned the Child, it did not expressly determine whether, under the totality of the circumstances, Father's intent during the twelve-month period was to abandon the Child. We therefore remand the case to the juvenile court to make such a determination.
We also address the issue of whether it was necessary for the juvenile court to delay ruling in adoption proceedings pending the outcome of the parenting-time motion in the dissolution court, as it will arise on remand. We hold that it is not necessary for a juvenile court to delay the adoption proceedings as long as it adequately considers the parenting-time motion in making the abandonment determination. Accordingly, we reverse the court of appeals and remand the case for further proceedings.

II.
Under the Colorado Children's Code, a proceeding for stepparent adoption necessarily includes the termination of the parental rights of the non-custodial parent. The proceeding commences when a stepparent files for adoption. In order to approve the adoption, the court must first determine whether the adoption is in the best interests of the child in accordance with section 19-5-210(2)(d), C.R.S. (2010). The court then must determine whether a child is available for adoption pursuant to section 19-5-203. A child may be available for adoption if the non-custodial parent consents to the adoption, if the parent has failed without cause to pay child support, or if the parent has abandoned the child for a period of a year or more. § 19-5-203(1)(d)(II). This case concerns whether Father abandoned the Child for a year or more.
First, we consider whether a finding of abandonment in this case was precluded because *324 Father had filed a motion for parenting time in the dissolution court alleging Mother's interference with him seeing the Child. We then turn to the issue of whether it is necessary for the juvenile court to delay ruling on the abandonment issue until the dissolution court rules on a motion for parenting time.

A.
Section 19-5-203(1)(d)(II) provides that a child may be available for adoption only upon "[w]ritten and verified consent of the parent in a stepparent adoption [and testimony] that the other birth parent has abandoned the child for a period of one year or more . . . ." (emphasis added). The statute therefore requires a determination that the child has been abandoned, and that the abandonment has occurred for a period of a year.
With regard to abandonment, the statute does not define the term. However, we have long recognized that "[a]bandonment is primarily a question of intent." Moreau v. Buchholz, 124 Colo. 302, 309, 236 P.2d 540, 543 (1951). As a number of courts have held, abandonment is the intention to permanently relinquish rights and responsibilities with regard to a child. C.C. Marvel, Annotation, What Constitutes Abandonment or Desertion of Child by Its Parent or Parents Within the Purview of Adoption Laws, 35 A.L.R.2d 662 (1954)(collecting cases). Further, we have observed that whether a person has an intent to abandon "is more often determined by what one does rather than by what he says." Moreau, 124 Colo. at 309, 236 P.2d at 543. In assessing whether a parent has the intent to abandon a child, the trial court must consider the totality of the circumstances, In re J.D.K., 37 P.3d 541, 543 (Colo.App.2001), and proof of abandonment must be made by clear and convincing evidence, In re R.H.N., 710 P.2d 482, 488 n. 5 (Colo.1985) ("[T]he requirement for clear and convincing evidence supporting termination is. . . applicable to the parental right terminations involved in stepparent-initiated adoption proceedings. . . .").
Regarding the appropriate timeframe for determining intent to abandon, the trial court must examine evidence of intent from the twelve-month period preceding the filing of the adoption proceeding. As we concluded in R.H.N., "the phrase `period of one year'. . . `means the consecutive twelve-month period immediately preceding' the stepparent adoption petition because that is the statute's `plain ordinary meaning.'" 710 P.2d at 487 (internal citation omitted). Section 19-5-203(1)(d)(II) is therefore retrospective in nature.
In R.H.N., we held that, in the context of termination for failure to pay child support, a court must not only look at the preceding twelve-month period, but also "look beyond the twelve-month period to determine whether there is any likelihood that the natural parent will provide child support." Id. We decline to extend such reasoning, however, to cases such as this one that concern abandonment. In the context of non-payment, a relationship between the non-paying parent and the child could still exist, and examination of the post-filing period could assist the trial court in determining whether payment may be made to support that relationship in the future. In contrast, in cases concerning abandonment, there is no such relationship to protect.[2]
In sum, the abandonment inquiry focuses on whether, under the totality of the circumstances, the parent's intent during the twelve months preceding the commencement of the adoption proceeding was to abandon the child. Turning to the circumstances presented by this case, the evidence of intent before the juvenile court was conflicting.
*325 Father admitted that he had seen the Child only a few times since separating from Mother and that all of these contacts were relatively brief. In addition, Father testified that he had not seen the Child after June 2006, more than twenty-one months before the petition for adoption was filed, nor did he send cards, letters, or gifts to the Child during that time. The trial court found that Father "[wa]s a stranger to the [C]hild."
Father testified that he did not intend to abandon the Child, however, and stated that his lack of contact with the Child was caused by the fact that Mother had interfered with him seeing the Child. Out of "[f]rustration," he testified, he stopped attempting to see the Child, and instead he "decided to try and reestablish [him]self, went out and got a different job, higher paying, a little bit more pay to it. [And he] [a]lso went out and got [his] own residence with a roommate." Four months before the commencement of the adoption proceeding, Father filed a pro se parenting-time motion, and another motion a month before the filing.
The juvenile court in this case concluded from this evidence that Father "ha[d] abandoned the [C]hild." The court found "[Mother's] testimony credible that she did not prevent [Father] from visiting [the Child]. [Father] always knew where [the Child] was, he simply chose not to see [the Child]." Further, the court found that "certain reasonable conditions were placed on [Father] by [Mother] before he could see the [C]hild, such as [the condition that Mother] needed to supervise a visit." The court recognized that "[t]hese conditions may have made [Father] uncomfortable, but . . . did not preclude him from seeing [the Child] and developing a healthy relationship with [the Child]." The court noted that it had considered the fact that Father had filed motions for parenting time in the dissolution case. However, the court found that the filing of the parenting-time motions was outweighed by overwhelming evidence of abandonment. "[Father] has shown no ability to give the appropriate attention to his parental responsibilities. The result of [Father's] choices is to have [a child] who does not even know him." The court concluded that "[Father] simply does not have a relationship with the [C]hild and that is the bottom line when considering whether abandonment has occurred."
It is the responsibility of the trial court to determine whether, considering the totality of the circumstances, a parent's intent during the relevant twelve-month period was to abandon the child. See, e.g., Moreau, 124 Colo. at 310, 236 P.2d at 544 (stressing the importance of the trial court in making abandonment determinations). This factual conclusion should not be disturbed unless it is clearly erroneous. J.A.V., 206 P.3d at 468 (citing In re R.A., 937 P.2d 731, 736 (Colo. 1997)); cf. R.H.N., 710 P.2d at 488 (finding that "[w]hether a parent has failed to provide reasonable support is a question of fact to be determined . . . on a case-by-case basis").
In this case, the court of appeals did not approach the abandonment determination as a question of fact best determined by the trial court. Instead, it held, essentially as a matter of law, that Father's filing of the parenting-time motions precluded a finding of an intent to abandon. In re D.P.H., slip. op. at 4. We disagree with both the court of appeals' approach and its conclusion. Here, the evidence of intent before the trial court was conflictingthat is, Father had no contact with the Child for an extended period of time, but he did file parenting-time motions prior to the expiration of the relevant twelve-month period, arguing that Mother had interfered with him seeing the Child. It is for the trial court to determine whether Father's extended absence from the Child's life, or his attempts to gain parenting time, better reflect his intent during the relevant twelve-month period. In other words, it is for the trial court to assess the conflicting evidence and determine whether, given the totality of the circumstances, Father had an intent to abandon the Child. The court of appeals erred by finding that one circumstancethat is, the filing of the parenting-time motions governed as a matter of law.
The court of appeals also erred in finding that this case was controlled by J.A.V., in which another division of the court of appeals reversed a trial court's finding of abandonment. In re D.P.H., slip op. at 4-6. In *326 J.A.V., the father had been prevented by court order from seeing his child, and had been challenging the court order for more than a year. 206 P.3d at 469. The district court found that, due to the fact that father had not contacted the child in the preceding year, he had abandoned the child. The court of appeals reversed, concluding that the district court improperly "ignor[ed] father's [numerous and repeated] efforts to obtain parenting time with his child," which showed that "[f]ather did not intend to abandon his rights with respect to the child." Id.
We agree with the court of appeals that the trial court erred in J.A.V.[3] We disagree with the court of appeals, however, that a finding of abandonment is similarly precluded in this case due to Father's filing of a parenting-time motion in the dissolution case. The trial court in J.A.V. failed to consider the totality of the circumstances, instead focusing exclusively on the father's absence from the child's life and ignoring the fact that the father was prevented from seeing the child by a court order. By contrast, here the juvenile court looked at the totality of the circumstances, weighed the evidence, and came to a conclusion. J.A.V. suggests that a trial court should examine all the circumstances that go toward establishing a parent's intent during the twelve-month period, not that any attempt to establish contact with a child automatically precludes a finding of intent to abandon. See, e.g., J.D.K., 37 P.3d at 543 (declining "to adopt a rule, as a matter of law, that a single phone call made during the year prior to the filing of the petition precludes a finding of abandonment").[4]
Having set forth the appropriate standards in this case, we decline to decide the issue of whether the juvenile court's determination of abandonment is supported by the record, and instead remand the case. Although the juvenile court held that Father had abandoned the Child, it did not make an express determination that Father had the intent during the relevant period to abandon the Child. Instead, it focused on the fact that Father had no relationship with the Child, and found that Mother had not prevented such a relationship from developing. We therefore vacate the juvenile court's order and remand the case for it to determine whether, under the totality of the circumstances, Father's intent during the twelve-month period preceding the filing of the adoption proceedings was to abandon the Child. The juvenile court may base this determination on evidence currently in the record or may, within its discretion, take new evidence.

B.
We next address whether it was necessary for the juvenile court to await the outcome of the parenting-time motion in the *327 dissolution court, as the issue will inform the juvenile court's intent determination on remand. We disagree with the court of appeals and hold that, if a juvenile court adequately considers the parenting-time motion in its abandonment determination, it is not necessary for it to delay adoption proceedings.
As an initial matter, we note that a juvenile court has jurisdiction over adoption proceedings even though a dissolution court may have pending before it a motion for parenting time. Section 19-1-104, C.R.S. (2010), provides that:
Where a custody award or an order allocating parental responsibilities with respect to a child has been made in a district court in a dissolution of marriage action or another proceeding and the jurisdiction of the district court in the case is continuing, the juvenile court may take jurisdiction in a case involving the same child if he or she is dependent or neglected or otherwise comes within the jurisdiction set forth in this section.

(emphasis added). While no one contends that this is a dependency or neglect case, section 19-1-104(1)(g) provides jurisdiction to the juvenile court specifically "[f]or the adoption of a person of any age."[5]
The question then becomes whether a juvenile court, as a matter of discretion, should delay ruling in the adoption proceedings pending the outcome of a parenting-time motion in the dissolution court. In coming to the conclusion that the court should have delayed its ruling in this case, the court of appeals' opinion again relied heavily on J.A.V. In re D.P.H., slip op. at 5-6. As noted above, the father in J.A.V. was under court order to have no contact with his child during the applicable twelve-month period. 206 P.3d at 469. During that period, however, the father filed various motions for parenting time. According to the court of appeals, the district court in the adoption case erred by simply "ignoring father's efforts to obtain parenting time with his child." Id. at 469-70.
Here, by contrast, the juvenile court did take into account Father's parenting-time motions in making its abandonment determination. We hold that, as long as a juvenile court adequately considers the parenting-time motion as part of its abandonment determination, it is not required to defer its ruling in order to allow the dissolution court to resolve the motion.

III.
For the foregoing reasons, we reverse the court of appeals and remand the case for further proceedings consistent with this opinion.
NOTES
[1] We granted certiorari on the following issues:

1. Whether the court of appeals erred in holding that a parent may preclude a finding of abandonment by demonstrating a future intent to return to the child.
2. Whether the court of appeals erred in concluding that the district court should have delayed its determination of the adoption proceedings to allow Father's motion to enforce parental rights to be decided first.
[2] We therefore agree with the court of appeals' decision in In re J.D.K., 37 P.3d at 543. In that case, the mother had an intent during the twelve-month period to abandon the child, but the evidence "was unequivocal that [she] was likely to exercise visitation with the child in the future" if her parental rights were not terminated. Id. Given the retrospective nature of section 19-5-203(1)(d)(II) in the context of abandonment, the court of appeals properly determined that the evidence of the mother's future intent was irrelevant. As the court in J.D.K. stated, it would not "consider the prospects that a parent, having abandoned the child, may later seek to establish a relationship with the child where there has been no support and nurturance." Id. at 544.
[3] We note that some language in J.A.V. might be read as inconsistent with the retrospective nature of section 19-5-203(1)(d)(II) in the abandonment context. For example, the court defined abandonment as "the act of leaving a spouse or child willfully and without an intent to return," 206 P.3d at 468 (citing Black's Law Dictionary (8th ed. 2004)), and stated that abandonment may not be found unless "the totality of the circumstances shows the natural parent has left the child willfully without an intent to return," id. at 468. These statements might be read to suggest that, even though a parent has an intent to abandon the child during the applicable twelve-month period, a future intent to parent (that is, to return to the child) would preclude a finding of abandonment. We do not read these statements in this manner, however. Instead, we find that the Black's Law Dictionary definition of abandonment simply does not address the timeframe over which intent is to be determined.
[4] The court of appeals in this case also referred to the fact that "Mother admitted at the stepparent adoption proceeding that she intended to exclude Father completely from the [C]hild's life," and that "Father testified at the hearing that once this stepparent adoption proceeding was filed, Mother would not allow him visitation unless he consented to adoption. . . ." In re D.P.H., slip. op. at 6. As to the first, Mother's testimony about excluding Father from the Child's life came as a response to a question from Father's counsel as to why it was not proper for the Child simply to have two father figures in his life. Mother's response was entirely prospective in nature, stating that, if it were to be determined that Father had abandoned the Child and that the stepparent adoption should proceed, the Child would have only one father, that is, the adoptive parent. As to Father's testimony regarding visitation, again the testimony focused entirely on the period after the adoption proceeding was filed. Given that this testimony relates exclusively to post-filing discussions between Mother and Father, it is unhelpful in determining Father's intent during the twelve-month period prior to the filing of the adoption proceeding.
[5] We thus reject Father's argument that, under Cartier v. Cartier, 94 Colo. 157, 162, 28 P.2d 1010, 1012 (Colo.1934), the juvenile court did not have jurisdiction to grant the adoption petition because a court cannot divest itself of jurisdiction after it has taken jurisdiction of the parties before it. The holding in Cartier has been modified, at least in this context, by statute.