24CA0435 Adoption of JL 10-17-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0435
Larimer County District Court No. 23JA30022
Honorable Sarah B. Cure, Judge

---

In the Matter of the Petition of B.C-H.,

Appellant,

for the Adoption of J.L., a Child,

and Concerning B.R.L.,

Appellee.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE JOHNSON
Fox and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 17, 2024

---

B.C-H., Pro Se

No appearance for Appellee

¶ 1    In this stepparent adoption proceeding, B.C-H. (stepfather) appeals the juvenile court's judgment denying his petition to adopt J.L. (the child).  We affirm.

## I.    Background

¶ 2    The child was born in 2018.  The child's father and mother separated when the child was four or five months old.  In July 2019, the juvenile court ordered father to pay child support.  Around the same time, father filed a petition for allocation of parental responsibilities.  In May 2020, the district court entered permanent orders that included a "step-up plan" for father to exercise supervised parenting time and then work his way up to unsupervised parenting time.  Thereafter, father was arrested and incarcerated several times.  Meanwhile, mother met stepfather in 2021, and they got married in April 2023.

¶ 3    In June 2023, stepfather filed a petition to adopt the child, which included a request to terminate father's parental rights.  Stepfather argued that father's parental rights should be terminated because father had abandoned the child and failed to provide financial support for one year or more.  The juvenile court held a contested hearing on stepfather's petition.  The court granted the

1

parties' request to bifurcate the proceeding so that the only issue to be decided at the hearing was whether father's parental rights should be terminated.

¶ 4     After taking the matter under advisement, the juvenile court issued a written order finding that stepfather had not proven that termination was in the child's best interests or that father abandoned the child or failed to provide reasonable financial support. Thus, the court denied stepfather's request to terminate father's parental rights. Then, finding that the child was not available for adoption, the court denied stepfather's petition to adopt the child.

## II.     Standard of Review and Applicable Law

¶ 5     We review the juvenile court's factual findings regarding the availability of a child for adoption for clear error. *D.P.H. v. J.L.B.*, 260 P.3d 320, 324 (Colo. 2011). A factual finding is clearly erroneous when it has no record support. *In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 11. But when the record supports the court's findings, we cannot reweigh the evidence or substitute our judgment for that of the juvenile court. *People in Interest of K.L.W.*, 2021 COA 56, ¶ 62. The credibility of

the witnesses, as well as the sufficiency, probative effect and weight of the evidence, and the inferences and conclusions to be drawn from them, are within the province of the juvenile court. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010); *see also D.P.H.*, 260 P.3d at 325 (noting that an appellate court may not disregard the juvenile court's resolution of conflicting evidence on review).

¶ 6     "[A] proceeding for stepparent adoption necessarily includes the termination of the parental rights of the non-custodial parent." *D.P.H.*, 260 P.3d at 323. In this context, the juvenile court must first determine whether an adoption would be in the child's best interests. *Id.* Then the court must determine whether the child is available for adoption pursuant to section 19-5-203, C.R.S. 2024. As relevant to this appeal, a child is available for adoption when the parent has (1) abandoned the child for a period of one year or more or (2) failed without cause to provide reasonable support for the child for one year or more. § 19-5-203(1)(d)(II). In evaluating whether a child is available for adoption, the juvenile court must consider the totality of the circumstances and focus on the twelve-

month period preceding the adoption petition's filing. *D.P.H.*, 260 P.3d at 325.

## III.    Analysis

¶ 7      Stepfather does not dispute the juvenile court's findings regarding the child's best interests.  But he argues that the court's findings regarding abandonment and financial support were erroneous because the evidence showed that father had, in fact, abandoned the child and failed to provide reasonable financial support.  He also argues that his counsel did not give him an opportunity to dispute the court's factual errors.  We discern no basis for reversal.

## A.    Abandonment

¶ 8      As noted above, a child may be available for stepparent adoption if the court finds that the birth parent has abandoned the child for a period of one year or more.  § 19-5-203(1)(d)(II). Although the statute does not define abandonment, our supreme court has recognized that it is primarily a question of whether a parent intended to "permanently relinquish rights and responsibilities with regard to a child," which is best measured by what the parent does rather than what the parent says.  *D.P.H.*, 260

P.3d at 324. In assessing whether a parent has abandoned a child, the court must examine the totality of the circumstances, viewed in light of the best interests of the child. *In re J.D.K.*, 37 P.3d 541, 543 (Colo. App. 2001).

¶ 9    Here, the juvenile court found that the evidence was "insufficient . . . to show that [father] intended to abandon his son." The court noted that father was incarcerated during the year before stepfather's petition, and thus, the only "feasible way" for father to have contacted the child was through written communication or phone calls to mother. The court then found that in the year leading up to the petition, father attempted to call mother from jail at least fourteen times. The court also found that when father and mother spoke on the phone, their conversations focused on the child, and father asked questions about the child, requested to speak to him, and attempted to "negotiate future contact" with him.

¶ 10    The court stated that the phone calls showed a "noticeable bond between father and son," as father spoke to the child with "love and tenderness" during the calls. The court "afford[ed] significant weight to the content, manner, and tone of [father's] recorded communication to and about [the child]." And, although

5

the court acknowledged that father's repeated incarcerations resulted in a "lack of contact and involvement in [the child's] life," it ultimately concluded that father "did what he could to mitigate his physical absence in his son's life" and that he "wish[ed] to be a father to [the child]." The court also found that the phone calls demonstrated that father "never intended to abandon [the child]." Based on these findings, the court concluded that stepfather failed to meet his burden to show that father abandoned the child.

¶ 11 The record supports these findings, and stepfather does not challenge them. Rather, stepfather argues that the phone calls were insufficient to show that father had not abandoned the child and that father's repeated incarcerations "should have been enough" for termination. Essentially, stepfather asks us to reweigh the evidence, which is something we cannot do. *See K.L.W.*, ¶ 62.

¶ 12 Stepfather also asserts that the juvenile court made "timeline errors" because it erroneously stated that an incident involving mother taking pictures of a scale in father's car occurred in 2022. The scale was allegedly the type commonly used to measure drugs. And stepfather argues that the court erroneously found that father exercised overnight visits when the child was young. But father

testified to both of these facts, and it was in the court's discretion to determine the credibility and weight of that testimony. *See A.J.L.*, 243 P.3d at 249-50. And the court did not rely on these findings in its analysis of whether father had abandoned the child. Instead, the court properly focused on father's conduct, including his attempts to contact the child, in the year leading up to stepfather's filing of the petition.

¶ 13 In sum, the juvenile court properly considered the totality of the circumstances and found that father did not intend to abandon the child. And because the court's findings regarding abandonment are supported by the record, we cannot disturb them. *See J.D.K.*, 37 P.3d at 545 (an appellate court is bound by the trial court's factual determinations that are supported by the evidence).

### B. Financial Support

¶ 14 A child may also be available for stepparent adoption if the juvenile court finds that the birth parent has failed, without cause, to provide reasonable support for the child for one year or more. § 19-5-203(1)(d)(II). The question of whether a parent has failed to provide reasonable support is a question of fact that the court must decide on a case-by-case basis. *In re E.R.S.*, 2019 COA 40, ¶ 51. In

determining whether a parent has failed to provide reasonable support, a court may consider the parent's incarceration, but it does not totally excuse a parent's obligation to provide some child support. *In re R.H.N.*, 710 P.2d 482, 487 (Colo. 1985).

¶ 15    Here, the juvenile court found that the evidence was insufficient to show that father failed to provide reasonable financial support without cause. The court found that father had provided financial support by making sixty-five child support payments since the entry of the child support order, noting that father's last payment was 108 days before stepfather filed the petition. The court acknowledged that in the year leading up to stepfather's petition, father paid a "significant" amount less than he was ordered to pay. But the court found that the "shortfall" was not without cause because father was incarcerated and his testimony about being unemployed and having depression was reliable. The court also noted that father's family attempted to provide gifts, which included "essentials such as clothing," to the child, but mother refused to take them. Based on these findings, the court concluded that stepfather did not meet his burden to show that father failed to provide reasonable financial support without cause.

¶ 16    The record supports these findings.  Stepfather asserts that because there was a seventeen-month gap and a twelve-month gap in father's child support payments, the court erred by finding that father's financial support was reasonable.  But the court considered the evidence showing these payment gaps, in conjunction with all the other evidence regarding father's attempts to provide financial support, and still concluded that the support was reasonable.  We cannot reweigh this evidence.  *See K.L.W.*, ¶ 62.  And because the court's findings regarding father's financial support are supported by the record, we cannot disturb them.  *See J.D.K.*, 37 P.3d at 545.

## C.    Counsel's Performance

¶ 17    Stepfather asserts that his counsel "did not give [him] the opportunity to dispute [the timeline] errors," and that as a result, the juvenile court erroneously took them as fact.  But stepfather does not develop this argument, and it is unclear if he intended to make a claim of ineffective assistance of counsel.  Regardless, a claim for ineffective assistance of counsel derives from either a constitutional or statutory right to counsel.  Cf. Ardolino v. People, 69 P.3d 73, 76 (Colo. 2003) (a criminal defendant bringing a claim of ineffective assistance of counsel had constitutional right to

9

effective assistance of counsel); People in Interest of A.J., 143 P.3d 1143, 1148 (Colo. App. 2006) (a parent bringing a claim of ineffective assistance of counsel in a termination proceeding had a statutory right to court-appointed counsel). Stepfather has not cited, nor are we aware of, any legal authority providing that stepparents have the right to counsel in stepparent adoption proceedings. Thus, to the extent stepfather claims ineffective assistance of counsel, we discern no basis for reversal.

## IV. Conclusion

¶ 18    The judgment is affirmed.

JUDGE FOX and JUDGE SCHOCK concur.