24CA2275 Adoption of LAQ 11-13-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2275
City and County of Broomfield District Court No. 24JA30007
Honorable Priscilla J. Loew, Judge

In re the Petition of F.C.J., IV, and C.C.J.,

Appellees,

for the Adoption of L.A.Q., a Child,

and Concerning J.J. and G.Q.,

Appellants.

JUDGMENT AFFIRMED

Division A
Opinion by JUSTICE MARTINEZ*
Román, C.J., and Hawthorne*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 13, 2025

Grob & Eirich, LLC, Andrew T. Fitzgerald, Lakewood, Colorado for Appellees

The Harris Law Firm, PLLP, Erika Carter, Denver, Colorado for Appellants

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    In this custodial adoption proceeding, J.J. (mother) and G.Q. (father) appeal the juvenile court's judgment terminating their parent-child legal relationships with L.A.Q. (the child). We affirm.

## I.    Background

¶ 2    The custodial parents, F.C.J., IV, and C.C.J., who are the child's maternal uncle and aunt, began caring for the child when she was six days old in March 2019. In October 2019, the child was returned to mother and father for four months but moved back to maternal uncle and aunt when the parents relapsed. In October 2020, the district court entered a stipulated allocation of parental responsibilities (APR) ordering physical custody and sole decision-making responsibility to maternal uncle and aunt. The APR judgment allowed mother and father to have weekly one-hour in person visits and weekly fifteen-minute video visits, supervised by a third party at parents' expense. The APR judgment provided a step-up procedure for the parents to expand parenting time if they completed substance abuse treatment and submitted regular monitored sobriety tests. The APR judgment also required that the parents pay fifty dollars per month in child support.

1

¶ 3    In May 2024, maternal uncle and aunt filed a petition for custodial adoption under section 19-5-203(1)(k), C.R.S. 2025. Following a hearing, the juvenile court terminated mother's and father's parental rights and granted the adoption petition.

## II.    Lack of Oral Ruling Transcript

¶ 4    As the appellants, the parents are responsible for providing an adequate record to support their claims of error.  *See Newport Pac. Cap. Co., Inc. v. Waste*, 878 P.2d 136, 139 (Colo. App. 1994).  This includes transcripts, if they are required for us to consider and decide the issues on appeal.  C.A.R. 10(d)(3).  In cases where a transcript of the proceedings is unavailable, the parties may file a statement of the evidence or proceedings in lieu of a transcript. C.A.R. 10(e).

¶ 5    Here, the parties agree that the juvenile court made an oral ruling with specific factual findings, but that the hearing was not recorded.  The parents did not follow the procedure outlined in C.A.R. 10(e) to provide a statement of the evidence or proceedings in lieu of the transcript.  Accordingly, we must presume that the missing transcript would support the juvenile court's judgment. *See In re Marriage of Tagen*, 62 P.3d 1092, 1096 (Colo. App. 2002).

### III. Custodial Adoption

¶ 6 Mother and father contend that the juvenile court erred when it terminated their parental rights. Although they concede that they failed to pay the court-ordered fifty dollars per month child support for more than a year, they argue that they nonetheless paid reasonable child support and that the court erred because it did not consider whether they would support the child going forward. Mother and father also contend that no evidence established that they had abandoned the child. We disagree with their argument about child support and do not address their second contention.

### A. Legal Standard

¶ 7 In a custodial adoption proceeding, a child may be adopted if (1) the birth parents have abandoned the child for a period of one year or more; or (2) the birth parents have failed without cause to provide reasonable support for the child for a period of one year or more. § 19-5-203(1)(k). This criteria must be established by clear and convincing evidence. *D.P.H. v. J.L.B.*, 260 P.3d 320, 324 (Colo. 2011); *In re R.H.N.*, 710 P.2d 482, 487 (Colo. 1985).

¶ 8 The appropriate time frame for these determinations is the twelve months preceding the filing of the adoption petition.

*See D.P.H.*, 260 P.3d at 324; *R.H.N.*, 710 P.2d at 487. However, our supreme court has stated that once a court has determined that a birth parent has failed to provide child support during the relevant twelve-month period, "the court must look beyond the twelve-month period to determine whether there is any likelihood that the natural parent will provide child support." *R.H.N.*, 710 P.2d at 487; *see also E.R.S. v. O.D.A.*, 779 P.2d 844, 848 (Colo. 1989) (court must consider parent's likelihood of providing future support to ensure a fundamentally fair procedure). Parents are not excused from their obligation to support their children merely because their incomes are small. *R.H.N.*, 710 P.2d at 487.

¶ 9 We will not disturb the juvenile court's determination unless it is clearly erroneous. *D.P.H.*, 260 P.3d at 325.

## B. Analysis

¶ 10 The parents assert that the juvenile court erred when it concluded that they failed, without cause, to provide reasonable support for the child for a period of one year or more. We are not persuaded.

¶ 11 The parties stipulated that the parents had not paid child support for the three-and-a-half-year period preceding the filing of

the petition. *See id.* at 324 (the relevant time period is the twelve-month period preceding the filing of the adoption petition). After the petition was filed, the parents made a lump sum child support payment bringing them current on their obligation. But after the parents paid the lump sum, they did not pay the next two months of child support payments on time, according to maternal uncle. Although both parents testified that it was now a priority for them to continue making regular and timely child support payments, neither explained how they would obtain the funds to pay continuing support.

¶ 12     On appeal, the parents argue that they were justified in not paying child support because maternal uncle told them they did not need to pay it. Maternal uncle and mother testified that during a mediation prior to the APR judgment being entered, maternal uncle told mother that she "didn't have to pay child support, that he wasn't looking for that." Mother testified that she relied on that statement and believed she did not have to pay child support. However, mother also testified that she was aware that maternal uncle later moved for a child support order, which the court granted, and the APR judgment required that she pay fifty dollars

per month. Father provided no explanation for his non-payment of child support.

¶ 13 The parents further contend that because they had to pay between thirty and thirty-five dollars for each supervised visit with the child, those payments should be considered reasonable child support. However, they provide no legal support for such an assertion. The stipulated APR judgment required both the payment of fifty dollars for child support each month and supervised visits at the parents' expense. Accordingly, the juvenile court was not required to find that payment for supervised visits was sufficient to establish that the parents provided reasonable support to the child.

¶ 14 The parents contend that the payment for supervised visits put them under great financial strain, and therefore they were unable to also pay monthly child support. But parents are not excused from paying some reasonable amount of child support merely because of strained finances. *R.H.N.*, 710 P.2d at 487. Also, this assertion is somewhat belied by the fact that parents were able to pay their three-and-a-half-year child support arrearages within a matter of months after the petition to adopt was filed.

¶ 15    Lastly, to the extent that the parents argue that evidence supports they would pay child support in the future, it is for the juvenile court to reconcile this evidence, not us. *See People in Interest of R.D.*, 2012 COA 35, ¶ 43 (the credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the discretion of the juvenile court).

¶ 16    Because of the lack of a transcript from the oral ruling, we cannot confirm whether the juvenile court relied on the evidence we related here or whether it made a specific finding that the parents are unlikely to pay child support in the future. However, we may presume that the juvenile court considered all the evidence at the hearing when making its determination. *See In re Marriage of Udis*, 780 P.2d 499, 503-04 (Colo. 1989) (appellate court may presume that the district court considered evidence presented, even if order does not expressly say that it did so).

¶ 17    Given that the record supports the juvenile court's conclusion that the parents failed without cause to provide support for the child for a period of one year or more, we need not address the parents' argument that the court erred because evidence did not

7

establish that they had abandoned the child for a period of one year or more because it is merely an alternative way of showing that a child is available for adoption. *See Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008) ("Generally, we presume the disjunctive use of the word 'or' marks distinctive categories.").

## IV.    Best Interests

¶ 18    Finally, mother and father contend that the juvenile court did not consider the child's best interests. We perceive no reversible error.

¶ 19    When considering a petition for custodial adoption of a child eligible for adoption, the court must also determine whether termination and adoption are in the child's best interests. § 19-5-210(2)(d), C.R.S. 2025; *E.R.S.*, 779 P.2d at 847. The court must make this determination because focusing solely on parental fault ignores the fact that termination may be detrimental to the child. *See R.H.N.*, 710 P.2d at 486. The court "may consider, among other factors, family stability, the present and future effects of adoption, including the detrimental effects of termination of parental rights, the child's emotional ties to and interaction with the [parties], the adjustment of the child to the living situation, the

child's age, and the mental and physical health of the parties." *Id.* Moreover, a court may not terminate the parent-child legal relationship and grant an adoption solely because the child's condition would be improved. *People in Interest of E.A.*, 638 P.2d 278, 285 (Colo. 1981).

¶ 20 The parents argue that the juvenile court "failed to provide any analysis or findings of fact" when it concluded that adoption was in the child's best interests. They assert that the court failed to consider the impact of termination on the child and her younger siblings, who live with their parents.

¶ 21 Because the juvenile court's written judgment lacks findings to support its conclusion, and we have no transcript of its oral ruling, we must again assume that its oral ruling supported its final determination. *See Tagen*, 62 P.3d at 1096. We may presume that the juvenile court considered the evidence presented by the parents about the child's relationship with them and her younger siblings and the impact of termination on those relationships, even if it did not make specific findings. *See Udis*, 780 P.2d at 503-04. To the extent that the parents argue that the juvenile court must consider and make findings on the factors listed in *R.H.N.*, we disagree. *See*

9

*R.H.N.*, 710 P.2d at 486 (the court may consider factors such as the detrimental effects of termination and more); *see also Kailey v. Chambers*, 261 P.3d 792, 795 (Colo. App. 2011) (use of the word "may" in a statute generally denotes discretion and a choice between two or more courses of action).

¶ 22 Moreover, the record supports the juvenile court's conclusion that adoption was in the child's best interest and would support specific findings explaining that conclusion. For example, maternal uncle testified that the child had lived with him, his wife, and the child's cousin — who she considered a brother — for the majority of her life. He testified that the child had questions about why she had a different last name and that she wanted to be included in the family. He testified that he and maternal aunt wanted to adopt the child so that she would have continued permanence of safety and stability.

¶ 23 Maternal uncle, mother, and mother's adult son all testified about mother's long-term substance use problems. Also, evidence established that the parents had not moved past supervised visits because they had not demonstrated sobriety or provided

documentation that they participated in substance abuse treatment.

¶ 24    Maternal uncle and aunt testified that the parents did not have consistent visits after the APR judgment was entered and had not visited with the child in more than six months at the time of the adoption hearing. Maternal uncle testified that when the child had visits, she felt frustrated. Maternal aunt testified that the child had "behaviors" after visits with the parents, including being "mean to other kids." The visitation supervisor testified that during visits occurring in early 2024, the child was very angry with father, yelled at him, and was frustrated and anxious. When the visitation supervisor tried to coach father to help him to investigate the reasons for the child's behavior, father did not follow her suggestions.

¶ 25    Because this evidence supports the juvenile court's conclusion that termination and adoption by maternal uncle and aunt were in the child's best interests, we cannot disturb it. *D.P.H.*, 260 P.3d at 325.

## V.    Disposition

¶ 26    We affirm the judgment.

CHIEF JUDGE ROMÁN and JUDGE HAWTHORNE concur.